| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK | |
| FELICIA ALTERESCU,<br><br>                Plaintiff<br><br>   -against-<br><br>NEW YORK CITY DEPARTMENT OF<br>EDUCATION; RICHARD CARRANZA,<br>CHANCELLOR; and  THE UNITED<br>FEDERATION OF TEACHERS,<br><br>                Defendants | Index No: 21-CV-00925-KPF<br><br><br>**AMENDED COMPLAINT** |

Plaintiff FELICIA ALTERESCU, ("Plaintiff"), by and through the undersigned attorney,

D. Christopher Mason, Esq., brings this action against the defendants, the DEPARTMENT OF

EDUCATION OF THE CITY OF NEW YORK, ("NYCDOE") and THE UNITED

FEDERATION OF TEACHERS ("UFT") and respectfully alleges as follows:

**PRELIMINARY STATEMENT**

1.  This is a civil action, seeking monetary and injunctive relief and punitive damages against

    defendants for the unlawful retaliatory actions and meritless termination of FELICIA

    ALTERESCU ("Plaintiff")  after  tenure procedures guaranteed by Constitutional Law

    codified in Education Law 3020-a(2)(a) were denied to her  before her termination hearing

    began, which resulted in the arbitrator deciding on the penalty of  termination without subject

    matter jurisdiction;  for defendants' tortious acts of fraud and deceit, both common and

    statutory, resulting in violations of her property and liberty rights under 42 U.S.C §1983

    and §1988, Stigma Plus, First and Fourteenth Amendments of the United States

    Constitution and those parts of the New York State Constitution which similarly apply

    with like language and together with this Court's pendent jurisdiction over causes of

    action arising under New York State laws, both common and statutory; for defendants'

1

prima facie torts pursuant to New York Correction Law §752, New York State Executive

Law Article 15 Section 290 et seq., New York Labor Law Section 740 (Retaliatory

personnel action by employers), New York State Constitution Article 1, Section 6 ; Chapter

I, Title 8 of the Administrative Code of the City of New York, Section 8-107(1)(a) (referred

to as the Human Rights Law of the City of New York), State laws governing employment

and workplace discrimination, collective bargaining agreements and payment of dues, fraud

and deceit; and for the ongoing and the continuing damage of her fingerprints being

flagged by a 'problem code' so that no one will hire her.

2.  The UFT violated their own procedures in order to "play nice" with the DOE in

depriving  Plaintiff of her tenure rights and pension benefits, as discovered in a letter

from NYSUT, the legal arm of the UFT.  Plaintiff seeks monetary and declaratory relief

against Defendants for committing acts with the intent and for the purpose of depriving

Plaintiff of property and liberty rights without the procedural due process guaranteed

under the Fourteenth Amendment of the Constitution of the United States and the UFT

Collective Bargaining Agreement and MOA (2014 and current), and for refusing to, or

neglecting to, prevent such deprivations and denials to Plaintiff.

3.  Plaintiff was denied a fair arbitration hearing after being served specious charges signed

by a person without lawful authority. Plaintiff was served Notice of a Probable Cause

determination pursuant to Education Law 3020-a yet embedded in the Notice is a

violation of that Law, with no vote in an Executive Session by the Panel for Educational

Policy. NYSUT threatened to drop her case and not represent her in the 3020-a if she

mentioned this violation of law.

4.  Ultimately, Plaintiff was forced to submit to an Arbitration hearing that violated her

tenure and protected right to due process in the Constitution.  Plaintiff was charged solely because of malice and bad faith.

5.  Defendants acted negligently and with actual malice, ignoring the multiple violations of procedural and substantive due process which left Plaintiff without her career spanning 26 years.

6.  The most important issue raised in this action is the pursuit of damages for constructive fraud where the alleged misrepresentation involves a promise of future performance required by the contracts, actual and implied. The harm done  Plaintiff includes: the defamation, discrimination, distress, suffering, mental, emotional, and physical anguish and humiliation and embarrassment inflicted upon the Plaintiff due to the negligence, carelessness, recklessness, and, misfeasance, malfeasance, and negligent acts practices, and/or omissions of the Defendants in negligently, improperly, and unprofessionally failing to expeditiously investigate false, frivolous, retaliatory, unsubstantiated, and delusive allegations erroneously made against the Plaintiff and inappropriately making her the subject of defamatory media coverage.

7.  The Plaintiff's reputation as a respected educator has been damaged, her professional career has been substantially compromised, and she has been unwillingly exposed to negative notoriety, which has publically humiliated and embarrassed her.

8.  The municipal Defendants in this action have been served with a timely Notice of Claim, and more than thirty (30) days have elapsed since the service of the Notice of Claim.

9.  The relief sought is monetary relief for damages as a result of the defamation, denial of due process, severe emotional, psychological, and physical distress, loss of reputation, loss of income, and expenses incurred by the Plaintiff in an amount to be determined at

trial but far exceeds the jurisdictional limits of all lower courts, which may otherwise

have jurisdiction, together with interest from 2018, plus the costs and disbursements of

the action, and for such other and further relief as to the Court seems just and proper.


## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. §1331

     as this matter involves federal questions.

11. This action's venue properly lies in the United States District Court for the Southern

     District of New York, pursuant to 28 USC §1391, because the headquarters of both the

     NYC DOE and the UFT are located at 52 Chambers Street New York City 10007 and 52

     Broadway, New York City 10004, respectively.

12. This Court has the power to issue declaratory relief pursuant to 28 U.S.C. §§2201 and

     2202.

13. This Court has supplemental jurisdiction over Plaintiff's state and city law claims under

     28 U.S.C. §1367(a).

14. Plaintiff previously served a written Verified Notice of Claim on the NYCDOE

     regarding her state and City law claims, which have not as yet been adjusted.


## PARTIES

15. Plaintiff is a resident of the State of New York, County of Suffolk, town of King's Park.

16. In the fall of 1992, Plaintiff was appointed by the NYCDOE to a position as an

     Elementary teacher with licenses in Special Education and Nursery-Grade 6.

17. In the fall of 1995 Plaintiff obtained tenure and proceeded to have excellent ratings.

18. At all relevant times The Department of Education of the City of New York ("NYCDOE") has been the governing body duly organized and existing under New York State Education Law with a school board, the Panel for Educational Policy ("PEP"), appointed by New York City political leaders from 2002 after Mayoral control took over the public schools.

19. At all relevant times, the Constitutional protections of tenure and educator discipline have been public policy in New York State, with Section 3020-a codified in Education Law Article 61, whereas Section 2590 citing the duties and responsibilities of the NYCDOE Chancellor is placed in Education Law Article 52(a).

20. At all times relevant, defendant NYCDOE has been charged by law with the duty of providing for the education of children living in the City of New York, State of New York.

21. Throughout her employment with the NYCDOE, Plaintiff has been a member of the United Federation of Teachers, Local 2, American Federation of Teachers, AFL-CIO ("DFT"), and policies and procedures governing the terms and conditions of her employment are contained in the Collective Bargaining Agreement between respondent DOE and the UFT.

22. From the start of her career to her untimely and unfair termination in June 2018, Plaintiff worked for the NYCDOE and was a Member of the UFT, and during this time was a "public employee" of the NYCDOE within the meaning of New York State Civil Service Law §75-b(1)(b).

23. Plaintiff has suffered the effects of Defendants' false statements made against her and continues to suffer discrimination and unemployment due to these false statements

deliberately applied to her life and character from 2018 to the present by the flagging of

her fingerprints at the Office pf Personnel Investigations. This "problem code" was

placed on her personnel file before she was charged with not attending a parent

association meeting, not after being wrongfully found guilty of this simple

misunderstanding which harmed no one. At no time was Plaintiff guilty of a crime as

defined under Article 23-a Section §752 of the NY Correction Law.


## FACTS AND ALLEGATIONS COMMON TO ALL COUNTS

24. On or about November 1, 2017, Plaintiff was served with 3020-a Specifications ("the

    Specifications") involving her alleged failure to appear at one parent teacher conference

    while incorrectly asserting that she was in the auditorium at that time, her alleged failure

    to attend eight professional development meetings, and her alleged failure to punch her

    timecard on three occasions.

25. None of the Specifications reached the standard for misconduct upon which the

    NYCDOE could charge an employee pursuant to Education Law 3020-a, yet neither the

    NYSUT attorney representing her, nor the NYC DOE stopped or blocked the charges

    from going to a full arbitration hearing.

26. What we have here is defendants' fraudulent concealment of a waiver of Constitutional

    due process codified in the tenure law procedures Education Law 3020-a(2)(a).

    Unbeknownst to Plaintiff, in or around 2002 when Mayor Bloomberg took over the

    public school system in NY City defendants had secretly collaborated on setting up a

    procedure that denied tenured educators their mandated protections for a determination

    of probable cause. Defendants' purpose was to remove tenured educators from their jobs

quickly and without the challenges put forth in the tenure law which Bloomberg never supported.

27. Before her 3020-a arbitration hearing began, Plaintiff was told that Rosalie Cardinale, a tenured teacher who had been terminated at 3020-a hearing, won her Appeal of her termination at her 3020-a after arguing the omission of a proper determination of probable cause. (In the Matter of Cardinale v NYC Department of Education, Supreme Court, Richmond County 85165/2017) After Plaintiff became aware of the Cardinale decision by Judge Desmond Green, Plaintiff asked her NYSUT attorney Keith Gross, appointed by the UFT to represent her, to submit a Motion To Dismiss the charges in the 3020-a before Arbitrator Mary O'Connell due to the omission of a vote on probable cause in an Executive Session of the PEP. In a letter reply to Plaintiff's request dated April 23, 2018, NYSUT General Counsel Robert Reilly informed Plaintiff that not only would her NYSUT Attorney Keith Gross never cite the Cardinale case as part of the 3020-a representation, but that if she continued to ask for this case to be argued, NYSUT would withdraw from representing her. This threat scared Plaintiff into silence, because she did not have the money to hire a private attorney.

28. On March 27,2018, and April 9, 16, 20, 25 and 30, 2018, Plaintiff's 3020-a hearing was held pursuant to N.Y. Education Law §3020-a ("the 3020-a Hearing").

29. On June 1,2018, the Hearing Officer rendered a decision ("the 3020-a Decision") sustaining two specifications: that Plaintiff had not attended a parent teacher conference on March 9, 2017, and that she had not attended eight professional development meetings between February, 2017 and April, 2017.

30. The Hearing Officer concluded that termination was the appropriate penalty.

31. Plaintiff received the 3020-a Decision on June 4, 2018.

32. On June 14, 2018, Plaintiff filed an Article 75 appeal of the Decision in New York State

   Supreme Court, on the grounds that:

   - the Hearing Officer's determination that termination was the appropriate

     penalty was disproportionate to the sustained specifications, which were that

     petitioner missed one parent teacher conference and eight professional

     development meetings.

   - the Decision to terminate Plaintiff was irrational and shocking to the

     conscience;

   - the Hearing Officer abused her discretion by basing the determination on

     matters not contained in the specifications;

   - the decision was arbitrary and capricious and violated Plaintiff's due process

     rights.

33. On February 25, 2019, Judge John Kelley denied the Plaintiff's Petition as well as the

   Department's Motion to Dismiss. Neither the Petition nor the Motion to Dismiss

   addressed the issues presented here, namely the omission of the vote by the PEP to

   determine probable cause, and the flag on Plaintiff's fingerprints which damages

   Plaintiff's ability to be given any employment opportunities.

34. Plaintiff has applied for multiple teaching positions and did not get return calls due to the

   stigma of the flag on her fingerprints:

   - applied on OLAS for 50 positions on July 15. 2019;

   - applied for another 75 positions on OLAS on August 1, 2019;

   - applied for multiple positions on ZipRecruiter, Career Builder, Indeed, and

Zip2Careers;

- On July 31, 2019, Plaintiff had an interview for a position at the Brookville Center for Children's Services in Old Westbury. She was called back to do two demo lessons on August 8, 2018. They expressed enthusiasm for her presentations and interest in Plaintiff. Salary and benefits were discussed, but she never heard anything further from them.

- On July 31, 2019, Plaintiff went to a Developmental Disabilities Institute Job fair in Smithtown and received an interview. There were three jobs available. They too expressed initial interest in Plaintiff, but she then received a letter from them stating that they did not need her at this time, yet they continued to advertise the positions.

- On August 1l, 2019, Plaintiff had an in-person interview with Metro Therapy, Inc., following a previous phone interview. She never heard back from them after sending in requested paperwork.

- On August 13, 2019, Plaintiff went on an interview with North Shore Schools in Glen Head. They also expressed interest in furthering her candidacy for the position, but she never heard back from them.

- On August 20, 2019, Plaintiff attended a Kings Park Central School District substitute teacher job fair and received an interview. She was hired over the phone on 9/13/19. On 9/16/19, Plaintiff went to complete the hiring paperwork. On 9/18/19, the School Board approved her employment as a Substitute Teacher, and then she worked on 9/19/19 for Fort Salonga Elementary School. Plaintiff subsequently noticed that there were no listings of available substitute teaching

positions for her from 9/9/19 through 9/23/19. She called the District Office and was told that they hired too many subs and can't keep track of them, so they do not need her.

- Plaintiff had a phone interview with Gersh Academy and was scheduled for an in-person interview for August 21, 2019, but received a cancellation on August 20, 2019, stating that the head person was away, and they would have to reschedule. Plaintiff never heard back from them.

- On August 22, 2019, Plaintiff had an interview with Little Playhouse in Dix Hills. She seemed interested but Plaintiff never heard back from anyone.

- On August 23, 2019, Plaintiff had a phone interview for a Special Education Teacher position with Maxim Healthcare Services. She sent them the information requested, but again, never heard back from anyone.

35. On November 23, 2020, Plaintiff filed a Summons and Notice in the New York State Supreme Court against Defendants for denying her rights to due process and protected procedures of tenure under Education Law 3020-a.

36. On February 4, 2021, the New York City Law Department removed the action from State Court to the U.S. District Court for the Southern District.


### AS AND FOR A FIRST CAUSE OF ACTION FOR SUBSTANTIAL INTERFERENCE WITH CONSTITUTIONALLY GUARANTEED RIGHTS

37. Plaintiff repeats, reiterates, and realleges, each of the allegations contained in the Plaintiff 's complaint as if more fully realleged and set forth at length herein.

38. That the defendants' actions violated the Fourteenth Amendments protection of all persons,

limiting the power of the States to interfere with the First Amendment freedoms of speechand

association, in that the Plaintiff was rendered incapable of availing herself of union assistance

due to the willful interference of defendants.

39. Defendants, under color of State Law, by allowing the administration of Plaintiff's

school to violate both the UFT contract and Chancellor's Regulations for charging her

unfairly and in clear violation of Plaintiff's lawfully mandated rights under the

Collective Bargaining Agreement (CBA) as well as the Department's rules and

regulations required by the New York State Education Department as Education Law

3020-a(2)(a), denied Plaintiff her rights under the Fourteenth Amendment and New York

Labor Law Section 740.

40. As a proximate result of Defendants' retaliatory actions against Plaintiff, Plaintiff has

suffered and continues to suffer a loss of past and future income, monetary damages,

humiliation, severe emotional distress, mental and physical anguish and suffering, and

damage to her professional reputation, in an amount to be determined at trial.

## AS AND FOR A SECOND CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

41. Plaintiff repeats, reiterates, and realleges, each of the allegations contained in the

Plaintiff s complaint as if more fully realleged and set forth at length herein.

42. That the egregious conduct of defendants was deliberate, malicious, willful and

made in bad faith in denying Plaintiff the protections guaranteed by tenure law, her

employment contract, and the UFT Collective Bargaining Agreement.

43. As a result of the foregoing, the Plaintiff sustained economic damages.

44. That by reason of the aforesaid, the Plaintiff was incapacitated from attending to her

usual duties, all to her damage.

## AS AND FOR A THIRD CAUSE OF ACTION FOR
## BREACH OF CONTRACT

45. Plaintiff repeats, reiterates, and realleges, each of the allegations contained in the

    Plaintiff's complaint designated as if more fully realleged and set forth at length

    herein.

46. That the defendants and the Plaintiff had in place employmentagreements that

    governed the employer/employee relationship throughout the period of time

    described herein, until 2018 when Plaintiff received her termination decision.

47. Defendants owed Plaintiff a duty of care that both ignored and thus constitutes a

    breach of contractual obligations.

48. As a result of the foregoing, the Plaintiff sustained economic damages.


## AS AND FOR A FOURTH CAUSE OF ACTION FOR FRAUD

49. Plaintiff repeats, reiterates, and realleges, each of the allegations contained in the

    Plaintiff's complaint designated as if more fully realleged and set forth at length

    herein.

50. While acting under the color of state law as a State Actor the UFT

    constructively terminated Plaintiff's license without providing procedural due

    process before the deprivation of property.

51. Defendants were negligent and departed from standards of good and accepted

    practice, of which they had a non-delegable duty to utilize reasonable care and

judgment in the performance of their respective responsibilities and obligations with respect to the Plaintiff concurrent with the terms and conditions in the CBA; such negligence was continuing and cumulative over the period of time referenced herein.

52. Defendants' negligence and negligent acts, whether taken singularly or in combination, were hidden and held secret from Plaintiff yet were the direct and proximate cause of Plaintiff 's suffering, mental anguish, and loss of personal dignity, both in the past and continuing in the future.

53. The Defendants, their agents, servants and/or employees were careless and negligent in departing from good and accepted practice in the investigation and monitoring of the unsubstantiated claims made against the Plaintiff; in screening them before taking action against a teacher, for their credibility, veracity, and reliability; and for the removal of the  Plaintiff from her position; among other things: in failing to possess the requisite learning, skill, knowledge and judgment ordinarily exercised in investigating and monitoring claims against faculty members; in failing to perform certain procedures, which the reasonably skillful and competent personnel would have so done under the circumstances; and in violating each and every rule, regulation, code statute or ordinance governing the exercise of reasonable care and due diligence concerning the management, and control of the aforementioned situation, including but not limited to, violating the contract existing between the New York City Department of Education (NYC DOE) and the United Federation of Teachers (UFT).

54. As a proximate result of Defendants' actions against Plaintiff, Plaintiff has suffered monetary damages, a loss of past and future income, severe emotional distress, humiliation, mental and physical anguish and suffering and damage to her professional reputation.

## AS AND FOR A FIFTH CAUSE OF ACTION FOR EQUAL PROTECTION AND STIGMA PLUS CLAIMS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS

55. Plaintiff repeats, reiterates, and realleges, each of the allegations contained in the Plaintiff's complaint designated as if more fully realleged and set forth at length herein.

56. Plaintiff's equal protection rights were violated because she was a tenured teacher who could be terminated for cause under a 3020A hearing without a proper determination of probable cause as required by the Statute.

57. Plaintiff did not waive her right to have probable cause hearing determined in her case as per Education Law 3020-a(2)(a). That the defendants' derogatory statements about the Plaintiff and the flagging of her fingerprints at the start of her hearing, created the impression of facts that are false and that malign the Plaintiff's professional and business abilities. The defendants' publication of the flag to press and the FBI or others who have no need to know them were made with the defendants' knowledge of their falsity, or with reckless disregard of their falsity.

58. At all relevant times the NYC DOE has kept the names and personnel file numbers of employees - who have been charged with any number of minor infractions or who have spoken out about wrong-doing by administrators - on a list called the "Problem Code" or "Ineligible Inquiry List". There is no information on the

procedures used, no standards for placement on this list, and no method by which a

person so placed may remove his/her name from this list.

59. As a result of the code, Plaintiff cannot obtain any job at the Department of

Education and thus she is stigmatized and unable to work in NYC public schools.

60. As a result of the foregoing, the Plaintiff sustained economic damages.

## AS AND FOR A SIXTH CAUSE OF ACTION FOR SUBSTANTIAL INTERFERENCE WITH CONSTITUTIONALLY GUARANTEED RIGHTS

61. Plaintiff repeats, reiterates, and realleges, each of the allegations contained in the

Plaintiff 's complaint as if more fully realleged and set forth at length herein.

62. That the defendants' actions violated the Fourteenth Amendments protection of all persons,

limiting the power of the States to interfere with the freedoms of speech and association, in that

the Plaintiff was rendered incapable of availing herself of union assistance due to the willful

interference of defendants.

63. By not having conducted a probable cause hearing before the 3020A hearing,  Plaintiff was

deprived of a constitutionally protected liberty or property interest and her employment,

professional reputation and ability to become employ again was greatly damaged.

64. As a result of the aforesaid, the Plaintiff suffered, still suffers, and will continue to suffer for

some time to come from mental anguish and was blocked from enjoying the fruits of her hard

work for 26 years as a teacher.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests judgment against Defendants as follows:

A.  For appropriate compensatory damages against Defendants in an amount to be

determined at trial over the losses of $500,000.

B.  For appropriate declaratory relief regarding the unconstitutional acts and practices

15

of Defendants;

C.  For removal of Plaintiff's name from the Problem Code held in her personnel file

at the Division of Human Resources;

D.  For nominal damages;

E.  For such other relief and further relief as may be deemed just and proper.


## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby

demands a trial by jury of all issues triable of right by a jury.

Dated: New York, New York
       June 4th, 2021

/s / D. Christopher Mason
D. Christopher Mason