| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK | |
| FELICIA ALTERESCU,<br><br>                Plaintiff<br><br><br>    -against-<br><br><br>NEW YORK CITY DEPARTMENT OF<br>EDUCATION; RICHARD CARRANZA,<br>CHANCELLOR; and  THE UNITED<br>FEDERATION OF TEACHERS,<br><br>              Defendants | Index No: 21-CV-00925-KPF<br><br><br><br><br>**SECOND AMENDED<br>COMPLAINT** |

Plaintiff FELICIA ALTERESCU ("Plaintiff") by and through the undersigned attorney, brings this action against the defendants, NEW YORK CITY DEPARTMENT OF EDUCATION, RICHARD CARRANZA, CHANCELLOR ("NYC DOE"); and THE UNITED FEDERATION OF TEACHERS (henceforth "UFT") and respectfully alleges as follows:

## PRELIMINARY STATEMENT

1. This is a civil action seeking injunctive relief, monetary relief, including past and on-going economic loss, compensatory and punitive damages seeking monetary and injunctive relief and punitive damages against defendants for the unlawful retaliatory actions and meritless termination and violations of Constitutionally protected rights given to Plaintiff FELICIA ALTERESCU ("plaintiff") as a tenured teacher under Education Law 3020-a, specifically Education Law 3020-a(2)(a) namely to have a proper determination of probable cause before any charges were filed diminishing her property

and liberty rights; to participate in choosing an arbitrator for any hearings and be treated

fairly by her Union, the United Federation of Teachers (UFT), as stated in the Collective

Bargaining Agreement while she was an employee of the NYC Department of Education.

2.   Plaintiff brings this action under, 42 U.S.C. § 1983, 29 U.S.C. §185, Stigma Plus, First

and  Fourteenth Amendment of  the United States Constitution and those parts of the

New York State Constitution which similarly apply with like language and together with

this Court's pendent jurisdiction over causes of action arising under New York State laws,

both common and statutory; State laws governing employment, seeking monetary and

declaratory relief against Defendants  for committing acts with the intent and for the

purpose of depriving Plaintiff of property  and liberty rights without the procedural due

process guaranteed under the Fourteenth Amendment of the Constitution of the United

States, and for refusing to or neglecting to  prevent such deprivations and denials to

Plaintiff.

3.   Plaintiff seeks monetary and declaratory relief against Defendants for forcing her into a

3020-a termination hearing on specious charges signed off on by Superintendent Danielle

DiMango, who signed her name without any legal authority. Plaintiff was served Notice

of a Probable Cause determination pursuant to Education Law 3020-a with no vote in an

Executive Session by the Panel For Educational Policy. NYSUT threatened to drop her

case and not represent her in the 3020-a if she mentioned this violation of law.

Ultimately, Plaintiff was forced to submit to an Arbitration hearing that violated her

tenure and protected right to due process in the Constitution. Plaintiff was charged solely

because of malice and bad faith. Plaintiff was denied a fair arbitration hearing and thus a

lawful, just penalty, by the pre-textual denial of her rights to a proper determination of probable cause as cited in Education Law 3020-a(2)(a).

4. But for the approval of the denial of those rights by the DOE and the UFT, Plaintiff was wrongfully, maliciously and in bad faith terminated and stigmatized permanently by being wrongfully charged and placed on the Ineligible/Inquiry or "no hire" List. Her fingerprints were sent to the New York State Division of Criminal Justice Services (DCJS") and the Federal Bureau of Investigation ("FBI") where she is permanently marked with a "PC, "problem code".

## JURISDICTION AND VENUE

5. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§1331 and 1343 for claims arising under 42 U.S.C. 1983. This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 1331 as this matter involves federal questions brought pursuant to Defendants' violations of 42 U.S.C. Section 1983, in particular the protections given by the Freedom of Speech First Amendment rights and Equal Protection Clause enclosed within the Fourteenth Amendment, as well as State law claims codified in the New York State Constitution, and Education Law §3020-a (the "tenure law") .

6. This action's venue properly lies in the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 1391, because the headquarters of the New York City Department of Education is located at 52 Chambers Street, Manhattan.  This Court has the power to issue declaratory relief pursuant to 28 U.S.C. §§2201 and 2202. This Court has supplemental jurisdiction over Plaintiff's state and city law claims under 28 U.S.C. § 1367.

7.  This Court has jurisdiction pursuant to 29 U.S.C. §185 to hear suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, which may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

8.  This Court has pendent and supplemental jurisdiction over Plaintiff's state law and city law claims, as the facts that form the basis of the state and city law claims are substantially similar to the facts that form the basis of the federal law claims.

9.  Plaintiff previously served a written Verified Notice of Claim on the NYCDOE regarding her state and City law claims, which have not as yet been adjusted.

**<u>PARTIES</u>**

10. Plaintiff is a resident of the State of New York, County of Suffolk, town of King's Park

11. Plaintiff began working for the New York City Department of Education ( "DOE") as a classroom teacher with licenses in Special Education and Nursery-Grade 6 in 1992.

12. In the fall of 1995 Plaintiff was granted tenure and proceeded to have excellent ratings.

13. At all relevant times The Department of Education of the City of New York ("NYCDOE") has been the governing body duly organized and existing under New York State Education Law with a school board, the Panel For Educational Policy ("PEP"), appointed by New York City political leaders from 2002 after Mayoral control took over the public schools.

14. At all relevant times the Constitutional protections of tenure and educator discipline have been public policy in New York State, with  Section 3020-a codified in Education Law Article 61, whereas Section 2590 citing the duties and responsibilities of the NYCDOE Chancellor is placed in Education Law Article 52(a).

15. At all times relevant, defendant NYCDOE has been charged by law with the duty of providing for the education of children living in the City of New York, State of New York.

16. Throughout her employment with the NYCDOE, plaintiff has been a member of the United Federation of Teachers, Local 2, American Federation of Teachers, AFL-CIO ("DFT"), and policies and procedures governing the terms and conditions of her employment are contained in the Collective Bargaining Agreement between respondent DOE and the UFT.

17. From the start of her career to her untimely and unfair termination in June 2018, plaintiff worked for the NYCDOE and was a Member of the UFT, and during this time was a "public employee" of the NYCDOE within the meaning of New York State Civil Service Law §75-b(1)(b).

18. Plaintiff has suffered the effects of Defendants' false statements made against her and continues to suffer discrimination and unemployment due to these false statements deliberately applied to her life and character from 2018 to the present by the flagging of her fingerprints at the Office pf Personnel Investigations. This "problem code" was placed on her personnel file before she was charged with not attending a parent association meeting, not after being wrongfully found guilty of

this simple misunderstanding which harmed no one. At no time was   plaintiff guilty of a crime as defined under Article 23-a Section §752 of the NY Correction Law.

## FACTS AND ALLEGATIONS COMMON TO ALL COUNTS

19. On or about November 1, 2017,  plaintiff was served with 3020-a Specifications ("the Specifications") involving her alleged failure to appear at one parent teacher conference while incorrectly asserting that she was in the auditorium at that time, her alleged failure to attend eight professional development meetings, and her alleged failure to punch her time card on three occasions.

20. None of the Specifications reached the standard for misconduct upon which the NYCDOE could charge an employee pursuant to Education Law 3020-a, yet neither the NYSUT attorney representing her nor the NYC DOE stopped or blocked the irrational charges from going to a full arbitration hearing. Indeed, Plaintiff requested that her NYSUT Attorney representing her at the 3020-a argue against moving forward to a full hearing because there was no proper or lawful determination of probable cause. Her attorney threatened her, saying NYSUT would withdraw from representing her if she wanted to have him mention the Cardinale case to the Arbitrator. See In the Matter of the Application of ROSALIE CARDINALE, Index No. 85165/2017 (March 29, 2018)

21. Additionally, the denial and/or omission of a proper determination of probable cause in violation of Education Law 3020-a(2)(a) which led to Plaintiff's termination is an unlawful result of the improper interpretation of  the statutory language and legislative intent of the tenure law (see Matter of Belmonte v Snashall, 2 NY3d 560, 566 [2004]).

The main goal in statutory construction is to discern the will of the Legislature and, as the clearest indicator of legislative intent is the statutory text, the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof. The intent of the New York State Legislature to keep the discipline of teachers separate from their contractual rights is seen in the fact that Section 3020-a  is codified in Education Law  Article 61, whereas Section 2590 is placed in Education Law Article 52(a). By subverting the tenure law to charge Plaintiff without a determination of probable cause and without her being able to choose the arbitrator, denied Plaintiff a fair hearing.

22. What we have here is defendants' fraudulent concealment of a waiver of Constitutional due process codified in the tenure law procedures Education Law 3020-a(2)(a). An additional right under tenure law is stated in NY State Regulations Part 82-3.5:

> **"82-3.5 Appointment of hearing officer in standard and expedited section 3020-a proceedings.**
> (a) Upon receipt of notification of the need for a hearing, the commissioner shall obtain a list of potential hearing officers, together with relevant biographical information from the association. Such list shall consist of individuals selected by the association who are qualified to serve as hearing officers. To be qualified to serve as a hearing officer, an individual shall:
> > (1) be on the association's panel of labor arbitrators;
> > (2) be a resident of New York or an adjoining state;
> > (3) be willing to serve under the conditions imposed by Education Law section 3020-a and this Subpart; and
> > (4) not be otherwise ineligible to serve pursuant to Education Law, section 3020-a(3)(c)(i).
> (b) Within 15 days after receiving the list of potential hearing officers from the commissioner, the parties shall by agreement select a hearing officer and notify the commissioner of their selection."

23. However, the UFT leaders cut their members out of taking part in the choosing of an

arbitrator in their 3020-a charging process, and NYC teachers charged with 3020-a specifications are the only labor group in NY State who do not have this right.

24. In a third denial of rights in the charging of teachers in NYC, UFT members in New York City are forced into 3020-a hearings before an arbitrator not only not chosen by the accused educator but hired by the UFT and the DOE for an entire year. This leads to collusion and the only one left out is the tenured teacher who is accused and set up to fail at the disciplinary hearing.

25. In the UFT contract, Article 21G(2) is the following:

"2. **. Rotational Panel**
As discussed and agreed upon, all parties would be served better by the implementation of a permanent arbitration panel. The panel members must be agreeable to both sides, however, if the parties cannot agree to a full complement of 20 panel members, additional impartial arbitrators shall be selected by the parties in accordance with the American Arbitration Association (AAA) procedures (strike and rank method) from list(s) provided by the AAA until the desired number (20) is reached to establish such permanent panel.

Panel members shall serve for a maximum of a one-year term. At the expiration of such term, the parties must agree to have arbitrators continue to serve on the panel, and if not, replacement members will be elected by the method outlined above. Removal prior to the end of the one-year term must be for good and sufficient cause upon mutual agreement of the parties.
Any arbitrator who agrees to serve on the rotational panel must agree to the following terms:
    a. Each arbitrator selected to serve on this rotational panel must agree to provide five (5) consecutive hearing dates per month for the months of September through June and two (2) hearing dates for the months of July and August. Consecutive days may be construed to mean five (5) dates within two (2) weeks unless otherwise agreed.
    b. Arbitrators must provide three (3) dates, within ten (10) to fifteen (15) calendar days from the date the case was assigned to him or her, for a pre-hearing conference. One of the dates shall be at 9:00 a.m. Advocates must accept one (1) of the three (3) dates offered or it will be assumed that the date or dates offered at 9:00 a.m. is (or are) acceptable. Said dates must be in compliance with Education Law §3020-a (within 10 to 15 days from the date selected to serve).
    c. At the pre-hearing conference, arbitrators must provide and parties must accept five (5) consecutive hearing dates within the statutory timeframe as delineated in Education Law §3020-a. Consecutive days may be construed to mean five (5) dates within two (2) weeks unless mutually agreed.

d. The parties are committed to having these cases heard in an expeditious manner. For this reason, absent extraordinary circumstances, arbitrators are not to adjourn hearing dates. It should be noted that normally attorney or party scheduling conflicts are not extraordinary circumstances.

e. In all cases, as delineated in Education Law §3020-a the final hearing shall be completed no later than 60 days from the pre-hearing conference and the written decision must be rendered within 30 days from the final hearing date.

f. There is a presumption that charges against the same employee will be consolidated unless the arbitrator finds that to do so would deny a fair hearing. Additionally, in routine matters, any motions must be made and responded to orally. Thereafter, a decision shall be rendered on the issue the same date the motion was made. Should the arbitrator find that written motion practice is necessary, either party reserves the right to respond orally but in no case shall motion practice take place outside the scope of the timelines as outlined in Education Law §3020-a. Failure to abide by these rules shall be "good and sufficient" grounds for removal of an arbitrator."

The UFT claims that speed should be the guide, not rights of the accused.

26. Before her 3020-a arbitration hearing began,  plaintiff was told that Rosalie Cardinale, a tenured teacher who had been terminated at 3020-a hearing, won her Appeal of her termination at her 3020-a after arguing the omission of a proper determination of probable cause. (In the Matter of Cardinale v NYC Department of Education, Index no.85165/17)

27. After plaintiff became aware of the Cardinale decision by Judge Desmond Green, plaintiff asked her NYSUT attorney Keith Gross, appointed by the UFT to represent her, to submit a Motion To Dismiss the charges in the 3020-a before Arbitrator Mary O'Connell due to the omission of a vote on probable cause in an Executive Session of the PEP. In a letter reply to plaintiff's request dated April 23, 2018, NYSUT General Counsel Robert Reilly informed plaintiff that not only would her NYSUT Attorney Keith Gross never cite the Cardinale case as part of the 3020-a representation, but that if she continued to ask for this case to be argued, NYSUT

would withdraw from representing her. This threat scared plaintiff into silence, because she did not have the money to hire a private attorney.

28. On March 27,2018, and April 9, 16,20,25 and 30, 2018,  plaintiff's 3020-a hearing was held pursuant to N.Y. Education Law §3020-a ("the 3020-a Hearing").

29. On June 1,2018, the Hearing Officer rendered a decision ("the 3020-a Decision") sustaining two specifications: that   plaintiff had not attended a parent teacher conference on March 9, 2017, and that she had not attended eight professional development meetings between February 2017 and April, 2017.

30. The Hearing Officer irrationally concluded that termination was the appropriate penalty.

31. Plaintiff received the 3020-a Decision on June 4, 2018.

32. On June 14, 2018, plaintiff filed an Article 75 appeal of the Decision in New York State Supreme Court, on the grounds that:

- the Hearing Officer's determination that termination was the appropriate penalty was disproportionate to the sustained specifications, which were that petitioner missed one parent teacher conference and eight professional development meetings;
- the Decision to terminate   plaintiff was irrational and shocking to the conscience;
- the Hearing Officer abused her discretion by basing the determination on matters not contained in the specifications;
-  the decision was arbitrary and capricious.

33. On February 25, 2019, Judge John Kelley denied the plaintiff's Petition as well as the Department's Motion To Dismiss. Neither the Petition nor the Motion to Dismiss addressed the issues presented here, namely the omission of the vote by the PEP to determine probable cause, and the flag on plaintiff's fingerprints which damages plaintiff's ability to be given any employment opportunities.

34. Plaintiff has applied for multiple teaching positions and did not get return calls due to the stigma of the flag on her fingerprints:

- applied on OLAS for 50 positions on July 15. 2019;
- applied for another 75 positions on OLAS on August 1, 2019;
- applied        for multiple positions on ZipRecruiter, Career Builder, Indeed, and Zip2Careers;
- On July 31, 2019,  plaintiff had an interview for a position at the Brookville Center for Children's Services in Old Westbury. She was called back to do two demo lessons on August 8, 2018. They expressed enthusiasm for her presentations and interest in   plaintiff. Salary and benefits were discussed, but she never heard anything further from them.
- On July 31, 2019, plaintiff went to a Developmental Disabilities Institute Job fair in Smithtown and received an interview. There were three jobs available. They too expressed initial interest in   plaintiff,   but she then received a letter from them stating that they did not need her at this time, yet they continued to advertise the positions.
- On August 1l, 2019, plaintiff had an in-person interview with Metro Therapy, Inc., following a previous phone interview. She never heard back from them after sending in requested paperwork.
- On August 13 2019, plaintiff went on an interview with North Shore Schools in Glen Head. They also expressed interest in furthering her candidacy for the position, but she never heard back from them
- On August 20, 2019, plaintiff attended a Kings Park Central School District substitute teacher job fair and received an interview. She was hired over the phone on 9/13/19. On 9/16/19, plaintiff went to complete the hiring paperwork. On 9/18/19, the School Board approved her employment as a Substitute Teacher, and then she worked on 9/19/19 for Fort Salonga Elementary School. Plaintiff subsequently noticed that there were no listings of available substitute teaching positions for her from 9/9/19 through 9/23/1. She called the District Office and was told that they hired too many subs and can't keep track of them, so they do not need her.
- Plaintiff had a phone interview with Gersh Academy and was scheduled for an in-person interview for August 21, 2019 but received a cancellation on August 20, 2019 stating that the head person was away and they would have to reschedule. Plaintiff never heard back from them.
- On August 22, 2019, plaintiff had an interview with Little Playhouse in  Dix Hills. She seemed interested but   plaintiff never heard back from anyone.
- On August 23, 2019, plaintiff had a phone interview for a Special Education

Teacher position with Maxim Healthcare Services. She sent them the information requested, but again, never heard back from anyone.

35. On November 23, 2020, plaintiff filed a Summons and Notice in the New York State Supreme Court against Defendants for denying her rights to due process and protected procedures of tenure under Education Law 3020-a.

36. On February 4, 2021, the New York City Law Department removed the action from State Court to the U.S. District Court for the Southern District.

### AS AND FOR A FIRST CAUSE OF ACTION FOR SUBSTANTIAL INTERFERENCE WITH CONSTITUTIONALLY GUARANTEED RIGHTS
**Violation/Interference with Constitutionally Protected Rights – 1st, 4th, 5th, & 14th Amendments; 42 U.S.C §1983 et seq.; Freedom of Speech and Association; Due Process and Equal Protection Rights;**

37. Plaintiff repeats, reiterates, and realleges, each of the allegations contained in the plaintiff's complaint as if more fully realleged and set forth at length herein.

38. That the defendants' actions violated the Fourteenth Amendments tenure law protections of all educators with tenure who were charged with 3020-a charges.

39. Defendants, under color of State Law, by allowing the administration of plaintiff's school to violate both the UFT contract and Chancellor's Regulations for charging her unfairly and in clear violation of plaintiff's lawfully mandated rights under the Collective Bargaining Agreement (CBA), and Education Law 3020-a(2)(a), committed fraud and acted deceitfully. All Defendants were aware that they were misrepresenting the 3020-a arbitration guarantee of "fairness" and "tenure protections" when they violated Plaintiff's due process rights and Constitutional protections under color of law.

40. The denial and/or omission of a proper determination of probable cause in violation of Education Law 3020-a(2)(a) which led to Plaintiff's termination is clearly an unlawful result of the improper interpretation of the statutory language and legislative intent of the tenure law (see Matter of Belmonte v Snashall, 2 NY3d 560, 566 [2004]). The main goal in statutory construction is to discern the will of the Legislature and, as the clearest indicator of legislative intent is the statutory text, the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof. Section 3020-a is codified in Education Law Article 61, whereas Section 2590 is placed in Education Law Article 52(a).

41. This placement dichotomy is not a trivial distinction, but rather reflects a legislative determination (and intent) to separate the powers of the Chancellor from the statutory due process template applicable to the termination of tenured teachers.

42. The inferred intent of the State legislature in making the policy codified in Education Law 3020-a(2)(a) is clear:

   a. At no time did the State codify a waiver of this clause in the Law;

   b. At no time did the State give the Chancellor a vote on the PEP so that he or she could then delegate the vote on probable cause for 3020-a charges to a Superintendent and/or anyone else down the line , i.e. a principal;

   c. At no time did the State relinquish their duty to uphold the lawful protections of tenure guaranteed in Education Law 3020-a, and the law does not permit any obstruction or delegation of this duty, namely the determination of probable cause, in the charging process;

   d. The Delegation Memos submitted by the Department never mention probable

13

cause in any context;

    e.  The Department's use of the Delegation Memos were to co-opt the determination of probable cause for their own purposes, to terminate employees quickly and without non-party scrutiny.

43. The Department has instituted a deceitful practice of skipping over the proper determination of probable cause codified in Education Law 3020-a(2)(a)) and replacing the lawful steps with a false and misleading process which does not give an arbitrator subject matter jurisdiction to hear and decide the case.

44. The school board in New York City is the Panel For Educational Policy ("PEP"). The PEP Bylaws state that the Chancellor "shall serve as a non-voting ex-officio member of the Panel for educational Policy (BYLAWS, PREAMBLE and Article 1, Section 1.1).

45. As a proximate result of Defendants' retaliatory actions against plaintiff,  plaintiff has suffered and continues to suffer a loss of past and future income, monetary damages, humiliation, severe emotional distress, mental and physical anguish and suffering, and damage to her professional reputation, in an amount to be determined at trial.


## AS AND FOR A SECOND CAUSE OF ACTION FOR
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
**Intentional and Negligent Infliction of Emotional Distress, Verbal Harassment, With Unjustified Threats of Future Harm;**


46. Plaintiff repeats, reiterates, and realleges, each of the allegations contained in the plaintiff's complaint as if more fully realleged and set forth at length herein.

47. That the egregious conduct of defendants was deliberate, malicious, willful and made in bad faith in denying   plaintiff the protections guaranteed by tenure law,

her employment contract, and the UFT Collective Bargaining Agreement.

48. As a result of the foregoing, the plaintiff sustained economic damages.

49. That by reason of the aforesaid, the plaintiff was incapacitated from attending to

her usual duties, all to her damage.


### AS AND FOR A THIRD CAUSE OF ACTION
### Violation of the Equal Protection Clause of the Fourteenth Amendment

50. Plaintiff repeats, reiterates, and realleges, each of the allegations contained in the

plaintiff's complaint as if more fully realleged and set forth at length herein.

51. By setting up a charging process that secretly denies the procedures cited in Education

Law 3020-a(2)(a) only in New York City and not elsewhere in New York State, Plaintiff

has been harmed by the arbitrary and irrational actions of Defendants, who, by their

unlawful actions empowered Arbitrator O'Connell to fire her, ignored her tenure rights

and acted in a way that partnered with the Defendants in denying Plaintiff a fair hearing.

52. Arbitrator O'Connell acted in bad faith to benefit herself financially while ignoring the

denial of tenure rights and the Constitutional rights due Plaintiff pursuant to the Law and

her UFT contract, all with the permission of the Defendants.

53. That the defendants and the plaintiff had in place employmentagreements that governed

the employer/employee relationship throughout the period of time described herein, until

2018 when   plaintiff received her termination decision.

54. By subverting the tenure law to charge Plaintiff without a determination of probable

cause and without her being able to choose the arbitrator, denied Plaintiff a fair hearing.

55. As a result of the foregoing, the   plaintiff sustained economic damages.


### AS AND FOR A FOURTH CAUSE OF ACTION

**Fraud; 29 U.S.C. §185; Breach of Contract**

56. Plaintiff repeats, reiterates, and realleges, each of the allegations contained in the plaintiff's complaint designated as if more fully realleged and set forth at length herein.

57. While acting under the color of state law the UFT and NYC DOE Defendants constructively terminated plaintiff's license without providing procedural due process before the deprivation of property and misrepresenting the protections of the tenure law Education Law 3020-a(2)(a). Fraudulent concealment of a non-existent waiver of the rights of tenured employees to the tenure law Education Law 3020-a(2)(a) by the NYCDOE cannot be sanctioned.

58. Defendants were negligent and departed from standards of good and accepted practice, of which they had a non-delegable duty to utilize reasonable care and judgment in the performance of their respective responsibilities and obligations with respect to the   plaintiff concurrent with the terms and conditions in the CBA; such negligence was continuing and cumulative over the period of time referenced herein. Defendants owed plaintiff a duty of care that both ignored and thus constitutes a breach of contractual obligations.

59. Defendants' negligence and negligent acts, whether taken singularly or in combination, were hidden and held secret from   plaintiff  yet were the direct and proximate cause of    plaintiff's suffering, mental anguish, and loss of personal dignity, both in the past and continuing in the future.

60. The Defendants, their agents, servants and/or employees were careless and negligent in departing from good and accepted practice in the investigation and monitoring of the unsubstantiated claims made against the   plaintiff; in screening them before taking action against a teacher, for their credibility, veracity, and reliability; and for the removal of the   plaintiff from her position; among other things: in failing to possess the requisite learning, skill, knowledge and judgment ordinarily exercised in investigating and monitoring claims against faculty members; in failing to perform certain procedures, which the reasonably skillful and competent personnel would have so done under the circumstances; and in violating each and every rule, regulation, code statute or ordinance governing the exercise of reasonable care and due diligence concerning the management, and control of the aforementioned situation, including but not limited to, violating the contract existing between the New York City Department of Education (NYC DOE) and the United Federation of Teachers (UFT).

61. As a proximate result of Defendants' actions against  plaintiff,  plaintiff has suffered monetary damages, a loss of past and future income, severe emotional distress, humiliation, mental and physical anguish and suffering and damage to her professional reputation.

## AS AND FOR A FIFTH CAUSE OF ACTION
### Deceit

62. Plaintiff repeats, reiterates, and realleges, each of the allegations contained in the plaintiff's complaint designated as if more fully realleged and set forth at length herein.

63. Plaintiff has been subjected to extreme and outrageous deceit by Defendants, whose intent is to cause - or recklessly disregard - the substantial probability of causing harm to the Plaintiff; damages have been severe; the harm to Plaintiff's life and career was foreseeable; the Defendants' conduct was the cause of the Plaintiff's distress; and facts show there is a breach of direct duty of care to the Plaintiff.

64. Plaintiff has shown that Defendants' actions in this matter were based upon (a) a false affirmation (b) by Defendants; (c) with scienter and intent to defraud the Plaintiff; and (d) Plaintiff was, and continues to be, damaged.

65. As a result of this retaliation, intimidation, and abuse, Plaintiff has been irrevocably harmed and demands judgment against Defendants an amount to be determined by a jury of her peers.

## AS AND FOR A SIXTH CAUSE OF ACTION
### Fraudulent Inducement

66. Plaintiff repeats, reiterates, and realleges, each of the allegations contained in the   plaintiffs complaint designated as if more fully realleged and set forth at length herein.

67. The fraudulent inducement of a contract occurs when someone deceives another party into entering into a contract or agreement, implied or actual. It can be made in several different ways — spoken, inferred, by a gesture, or even keeping silent when there is a duty to speak.

68. Plaintiff has a claim that the elements of fraudulent inducement are present here due to:

(a) Defendants made a false representation.

(b) The representation is material to the transaction.
(c) Defendants made the representation either with the knowledge that it was false or with reckless disregard as to the truth.
(d) Defendants made the representation with the intent of inducing the plaintiff to enter into a contract.
(e) The plaintiff reasonably relied on the misrepresentation when entering into the contract.
(f) The Defendants' misrepresentation caused injury to the plaintiff.

69. Under contract law, fraudulent misrepresentation is one of three forms of misrepresentation. The other two are negligent misrepresentation where the defendant makes a statement without any regard for whether or not it is true and innocent misrepresentation where the defendant had no knowledge that the representation was false.

## AS AND FOR A SEVENTH CAUSE OF ACTION
### Stigma Plus Claims

70. Plaintiff repeats, reiterates, and realleges, each of the allegations contained in the plaintiff's complaint designated as if more fully realleged and set forth at length herein.

71. Plaintiff's equal protection rights were violated because she was a tenured teacher who could be terminated for cause under a 3020A hearing without a proper determination of probable cause as required by the Statute.

72. Plaintiff did not waive her right to have probable cause hearing determined in her case as per Education Law 3020-a(2)(a). That the defendants' derogatory statements about the plaintiff and the flagging of her fingerprints at the start of her hearing, created the impression of facts that are false and that malign the plaintiffs professional and business abilities as well as her character and

standing in the Community.

73. The defendants' publication of the flag to press and the FBI or others who have no need to know them were made with the Defendants' knowledge of their falsity, or with reckless disregard of their falsity.

74. At all relevant times the NYC DOE has kept the names and personnel file numbers of employees - who have been charged with any number of minor infractions or who have spoken out about wrong-doing by administrators - on a list called the "Problem Code" or "Ineligible Inquiry List". There is no information on the procedures used, no standards for placement on this list, and no method by which a person so placed may remove his/her name from this list.

75. As a result of the code, plaintiff cannot obtain any job at the Department of Education and thus she is stigmatized and unable to work in NYC public schools. She has been blacklisted.

76. As a result of the foregoing, the  plaintiff sustained economic damages.


**<u>PRAYER FOR RELIEF</u>**

      **WHEREFORE**, plaintiff requests judgment against Defendants as follows:

- For appropriate compensatory damages against Defendants in an amount to be determined at trial over the losses of $500,000.

- For appropriate declaratory relief regarding the unconstitutional acts and practices of Defendants;

- For removal of  plaintiff's name from the Problem Code held in her personnel file at

the Division of Human Resources.

- For nominal damages and Attorney fees;

- For such other relief and further relief as may be deemed just and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff

hereby demands a trial by jury of all issues triable of right by a jury.

Dated: New York, New York
       August 26, 2021

/s/ D. Christopher Mason
D. Christopher Mason

21