UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____x

FELICIA ALTERESCU,

                        Plaintiff                        Index No.  2l-cv-00925 (KPF)



                -against-


NEW YORK CITY DEPARTMENT OF EDUCATION
RICHARD CARRANZA, CHANCELLOR; and THE
UNITED FEDERATION OF TEACHERS,

                Defendants
_____x



# PLAINTIFF'S OPPOSITION TO MOTIONS TO DISMISS SECOND AMENDED COMPLAINT




MASON LAW, PLLC.

*/s/ D. Christopher Mason, Esq*
D. Christopher Mason, Esq.
11 Broadway – Suite 615
New York, NY10004
(212) 498-9691

1

## TABLE OF CONTENTS

Preliminary Statement…………………………………………………………………..…3

Argument…………………………………………………………………………….…4

    Point I: Standard of Review……………………………………………………….........4

    Point II:  Plaintiff's Claim To A Proper Determination of Probable Cause States a
             Cause of Action ………………………………………………………….…5

    Point III: Plaintiff's Fourteenth Amendment Stigma Plus Claim States A Cause of
          Action……………………………………………………………………..………15

    Point IV: The Statute of Limitations Has Not Expired On All Causes of Action……...21
          Other Than Fraud

    Point V: The Plaintiff Has Sufficiently Stated A Cause of Action For Fraud……..........24

    Point VI: Plaintiff's Claims Are Not Barred By The Doctrine of Collateral Estoppel…..26

Conclusion…………………………………………………………………………………28

## PRELIMINARY STATEMENT

Plaintiff Felicia Alterescu ("Plaintiff") by and through her Attorney Mason Law, PLLC., submits this opposition to the Motions To Dismiss of the Defendants, the New York City Department of Education and Richard Carranza ("DOE Defendants") and the United Federation of Teachers ("UFT"). Plaintiff was forced by Defendants to submit to a compulsory arbitration citing specious charges which had little to do with her performance as a teacher, and was terminated from her long career as a teacher. Additionally, before her 3020-a hearing began, Plaintiff asked her NYSUT Attorney (on contract to the United Federation of Teachers "UFT") to pursue adjournment on the matter of the denial of her Constitutional right to a proper determination of probable cause pursuant to Education Law 3020-a(2)(a). Her charging papers showed that there was no Executive Session nor a vote on probable cause for the charges in her case by the New York City school board, the Panel For Educational Policy ("PEP"). Plaintiff did not waive her right to have probable cause hearing determined in her case as per Education Law 3020-a(2)(a). Rather than consider her request based upon the ruling in the Richmond County Supreme Court by Judge Desmond Green (Index No. 85165/2017), Plaintiff's designated NYSUT Attorney threatened to quit rather than bring this ruling to the Arbitrators attention. Plaintiff was subsequently terminated by an Arbitrator who lacked subject matter jurisdiction to give any penalty whatsoever. Plaintiff filed an Article 75 to vacate this decision, but in the Appeal she was precluded from citing the improper determination of probable cause due to the threat of her Attorney to quit if she brought this up at her hearing. As a result of the termination and defamatory statements alleging that Plaintiff was incompetent and not fit to teach, Plaintiff's professional reputation and job prospects were greatly injured. Plaintiff's name was placed in the ineligible list and her fingerprints were flagged. Thus, but for the Defendants' actions in

defending a denial of Plaintiff's property and liberty rights pursuant to tenure law, Plaintiff would not have lost her job and suffered extreme stigmatizing, emotional and financial damages. Defendants' Motions To Dismiss should be denied in their entirety.

## ARGUMENT

## POINT I: STANDARD OF REVIEW

Under the Federal Rules, a claimant must provide a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a). When deciding a motion to dismiss for failure to state a claim pursuant to Federal Rule 12 (b)(6), the court must accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences in plaintiff's favor. See Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007)). In order to survive a motion to dismiss pursuant to Federal Rule 12(b)(6), a Plaintiff must plead enough facts to state a claim to relief that is plausible on its face. See Bell Atl Corp. v. Twombly, 550 U.S. 544, 570 (2007). A facially plausible claim is one where the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Where the court finds well-pleaded factual allegations, it should assume their veracity and determine whether they plausibly give rise to an entitlement to relief. Iqbal, 129 S. Ct. at 1950. In ruling on a motion to dismiss, a court may consider the facts asserted within the four corners of the complaint together with the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference. Peter F. Gaito Architecture, LLC v. Simone Dev. Corp., 602 F.3d 57, 64 (2d Cir. 2010).

**POINT II: PLAINTIFF'S CLAIM TO A PROPER DETERMINATION OF PROBABLE CAUSE STATES A CAUSE OF ACTION**

In their Motions to Dismiss, Defendants ignore or minimize significant procedural and substantive deficiencies which exist in the pre-hearing process at Section 3020-a arbitration hearings in New York City in order to convince this Court not to hear Plaintiff's arguments on the issue of the denial of her Due Process and Constitutional rights at the hearing. Defendants' intentional neglect when acted upon in a §3020-a Arbitration interferes with New York State public policy concerning the protection of teachers who have tenure, namely Education Law 3020-a, and specifically cited in Section §3020-a(2)(a) on the determination of probable cause.

New York State created the public school tenure system guaranteeing continued employment to tenured teachers by statute and therefore created a property right in a tenured teacher's continued employment. (See Education Law §§§ 3012,3012-a, 3020, Holt v. Board of Educ. Of Webutuck Cent. School Dist., 52 NY2d 625 [1981], Matter of Abromvich v. Board of Educ. of Cent. School Dist. No. 1 of Towns of Brookhaven & Smithtown, 46 NY2d 450 [1979]). None of the Specifications filed against Plaintiff reached the standard for misconduct upon which the NYCDOE could charge an employee pursuant to Education Law 3020-a, yet neither the NYSUT attorney representing her nor the NYCDOE stopped or blocked the irrational charges from going to a full hearing. No waiver of Education Law 3020-a(2)(a) was ever submitted by the Defendants at the arbitration nor in their Motions submitted here, and this waiver is mandatory if changes to Constitutional Law are to be put aside in favor of alternate laws, rules or regulations.

In her Second Amended Complaint Plaintiff presented a very specific, factual argument on the denial of tenure law protections and due process denial before a 3020-a arbitration begins

and before the accused educator is served the charges. All parties in this matter do not dispute that the charging papers received by the Plaintiff on or about November 1, 2017, state that Education Law 3020-a(2)(a) requires a vote by the majority of members of the PEP on probable cause in an Executive Session before the charges are served and before an Arbitrator is chosen to hear any case. The papers also say that a vote in an Executive Session was taken, "on the above date" …but there is no date. All parties agree that the Executive Session never occurred and that there is no date in the papers sent to Plaintiff titled "NOTICE OF DETERMINATION OF PROBABLE CAUSE PURSUANT TO EDUCATION LAW 3020-A CHARGES".

Defendants argue away the omission of this mandated procedure using nonsensical and unlawful claims, such as:

"Plaintiff is mistaken as there is no such requirement….."[T]here is no longer a requirement to have a majority vote of the board of education due to the later-enacted Education Law § 2590 that vested authority in the Chancellor in place of the board of education to delegate said authority to superintendents and others he or she deems appropriate."(Department's Memorandum of Law, Motion To Dismiss SAC, p. 10); "Pursuant to Education Law § 2590-h, the Chancellor has the authority to promulgate regulations 'necessary or convenient' to the administration of the public school system"… and, "The DOE Chancellor has the statutory authority to exercise the same powers as the Board, including the power to make a probable cause determination against a tenured teacher, and then to delegate that power to the superintendents and to the principals." See Education Law §§ 2590-h(19), 2590-h(38), 2590-f(1)(b)" (DOE Mem. Law,  p. 11). These statements are false.

Defendant UFT writes in their Memorandum of Law that Plaintiff's Second Amended Complaint should be dismissed due to: "First, Plaintiff's apparent dissatisfaction with sound legal counsel (p. 8); Plaintiff's claims are based on a misunderstanding of N.Y. Educ. Law §§ 3020-a, 2590-h, and 2590-f, interpreted by this Court and "numerous state courts" as "giving the Chancellor the authority to delegate the process of preferring charges against tenured teachers to the District Superintendent, who in turn may delegate that authority to local school principals," as well as authorizing the UFT and DOE to negotiate "alternative procedures," (p. 8); "Second, the Complaint fails to state a constitutional claim, because (i) unions are generally not considered state actors; (ii) there is no factual allegation that the UFT took any action, let alone conspired with the DOE, to deprive Plaintiff of any constitutional right; and (iii) there is no underlying violation of any constitutional right, including to procedural due process, as Plaintiff alleges that she received written notice of the charges against her, participated in a full-blown Educ. Law § 3020-a hearing, and availed herself of review procedures pursuant to Article 75 of the CPLR" (p. 8); "the Complaint fails to plead sufficient facts pursuant to Martin v. Curran, 303 N.Y. 276 (1951) to demonstrate ratification by the UFT of allegedly tortious conduct" (p. 9); "Finally, Plaintiff is precluded from challenging factual or legal findings made by the Arbitrator and confirmed by the Supreme Court." (p. 9). These statements are not supported by logic, necessary facts, or relevant, current law. Indeed, according to Cantwell v. Special Super. Off. Benevolent Assoc, 07-CV-1154 (ENV) (CLP) (E.D.N.Y. Mar. 23, 2011), Martin v. Curran is not good law:

"The union argues, however, that plaintiffs' claim is forbidden under Martin v. Curran, 303 N.Y. 276 (1951), which holds that voluntary, unincorporated associations cannot be sued for tort unless the tort is provable against each and every member of the association. But Martin is inapposite here, as New York law specifically allows suits for breach of contract against an

unincorporated union for wrongful expulsion of its members, without the need to prove the claim against all of the union's members. See Madden v. Atkins, 4 N.Y.2d 283, 295, 151 N.E.2d 73, 79 (1958) (recognizing "the right of one wrongfully expelled to recover damages from the union, for what amounts to a breach of contract, even though only a portion of its membership may have favored, or voted for, the action taken"); see also Jund v. Town of Hempstead, 941 F.2d 1271, 1281 (2d Cir. 1991). Madden is on point and is the controlling state law precedent here.

In her Second Amended Complaint, Plaintiff pled 29 U.S.C. §185, stating that this Court has jurisdiction to hear suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, which may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

The arguments the UFT/NYSUT put forth in their Motion To Dismiss that a determination of probable cause did not have to be voted on in an Executive Session and could be waived is undermined by NYSUT Attorney Chris Lewis, who made the following argument in the 3020-a hearing of teacher Sally Burstein, October 5, 2018:

> "During oral argument, the Department stated that--even if the conversation between Respondent and Ms. Rolon had originally been privileged-that privilege was waived when Ms. Rolon disclosed its contents to Ms. Young. This argument misstates the well-established rules of privilege waiver. Privilege "belongs" to the client and is not waived absent "express authorization" by the client. As stated, by the Supreme Court of the United States, "[a] waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege."(emphasis added)!' This waiver applies not only to the right of attorney-client privilege but to any such right belonging to a party. For example, the Court of Appeals has ruled that the waiver of a union's contractual right must be "be clear, unmistakable and without ambiguity, (Professional Staff Congress-CUNY v. PERB 7 N.Y.3d 458, 465 (2006)). Clearly, only the holder of the privilege can waive that privilege and can only do so knowingly and willingly."

Additionally, in a Fact Sheet published online on the NYSUT website (NYSUT.org) with the title "Changes to Tenure and the Tenured Teacher Removal Process" dated September 2015 https://www.nysut.org/~/media/files/nysut/resources/2020/2020_05_18_factsheet_15_15_changes_to_tenure_and-tenured_teacher_removal.pdf, Updates Fact Sheet No. 15-15 states:

**Q: What is tenure?**

A: Tenure is simply a statutory right to due process that was first enacted for New York City teachers in 1897 and expanded to cover Union Free School districts in 1937. Teachers were uniquely vulnerable in a public school setting. There were few, if any policies in place to protect teachers from being fired. Without job protection, teachers could be fired for literally any reason. Race, faith, gender and favoritism were some of the most common reasons for firing teachers before 1885, as was their political affiliation. Women could even be fired for becoming pregnant. Teacher unions in NYS did not negotiate the tenure laws. Tenure law was established in State Education Law decades before teachers' unions were recognized in NYS. In 1945, tenure law was amended to extend basic due process rights to all public school teachers. The tenure law has been amended several times in the last 40 years.

**Q: What is 3020-a and how does it relate to Due Process?**

A: Education Law § 3020-a governs the disciplinary procedures of tenured teachers and administrators (except superintendents) and provides due process. Due process consists of the minimum procedural requirements that each public school district must satisfy when dismissing a teacher who has attained tenure. Due process is one of the core foundations of our judicial system. Similar safeguards are in place to ensure police officers, firefighters and other public servants at the state and local levels cannot be arbitrarily dismissed based on allegations alone, or for politically motivated reasons. Due process and tenure are NOT a job protection for life.

**Q. What are the due process requirements concerning charges of incompetence or misconduct under § 3020-a?**

• Charges in writing filed with the school district during the school year.

• **Within five days of receipt of charges, the Board of Education determines if there is probable cause to bring disciplinary proceedings.**

• If yes, a written notice sent to the employee detailing charges, the penalty imposed if employee waives hearing, and the employee's rights, sent by certified or registered mail.

• The employee may be suspended with pay (there are exceptions, see below).

• Within 10 days of receipt of charges, the employee will notify the district in writing if they

   request a hearing.

• The district will notify the Commissioner within 3 (working) days of the need for a hearing

• If the employee waives the hearing, the employing board determines the outcome in 15 days.
•
• If the employee demands a hearing, such hearing is held before an impartial hearing officer.

• Different rules apply to the hearing itself depending upon the nature of the charges.


Court decisions citing the alternate procedures supported by Defendants are dated before the 2017 decision made in the Matter of the Application of ROSALIE CARDINALE, Richmond County Supreme Court, Index No. 85165/2017 (March 29, 2018). The Appeal of the Cardinale decision to the Second Department Appellate Division by the Department, has not been decided. Judge Desmond Green was very clear in his decision in the Cardinale case that the procedural protections in Education Law 3020-a could not be ignored, overlooked, nor pushed aside for any reason. He wrote,

   "The Court of Appeals speaking on the necessity of teacher's tenure stated:

   [tenure] is a legislative expression of a firm public policy determination that the interests of the public in the education of our youth can best be served by a system designed to foster academic freedom in our schools and to protect competent teachers from the abuses they might be subjected to if they could be dismissed at the whim of their supervisors. In order to effectuate these convergent purposes, it is necessary to construe the tenure system broadly in favor of the teacher, and to strictly police procedures which might result in the corruption of that system by the manipulation of the requirements for tenure…

   Ricca v. Board of Education, 47 NY2d 385, 391 (1979) (emphasis added). This Court reasons the same strict policing applied to the procedure granting tenure to teachers apply equally to the procedures applied when a school district seeks the removal of a teacher's

tenure. (See Holt v. Board of Ed. of Webutuck Central School Dist., 52 NY2d 625, 632 [1981] [finding "[t]he purpose of the statute [Education Law §3020-a] is to protect teachers from arbitrary imposition of formal discipline.

Petitioner argues, correctly, the Education Law requires a finding "whether probable cause exists to bring a disciplinary proceeding against an employee" (Education Law §3020-a[2]). There exists no statutory language indicating the statutes permitting the delegation of duties and responsibilities from the employing board to the office of the Chancellor eliminated the precondition of a finding of "probable cause" before subjecting a tenured teacher to the disciplinary hearing anticipated under Education Law §3020-a. Indeed if the DOE properly demonstrated the office of the Chancellor delegated its duties and responsibilities to subordinate administrators, there exists no evidence showing a determination that probable cause existed supporting the allegations against Petitioner."

The proper determination of probable cause which is required by statute in New York State (Education Law 3020-a(2)(a)) is detailed in the Law, with a series of steps which must be taken in order to give an arbitrator subject matter jurisdiction. The school board in New York City is the Panel For Educational Policy ("PEP"). In the Bylaws, agreed on by the New York State legislature when Mayoral control was established in 2002 and renewed in 2009, the Chancellor "shall serve as a non-voting ex-officio member of the Panel for Educational Policy……The Chancellor is the chief executive officer and Superintendent of the City School District and shall have such powers and duties as are prescribed by law. He/she shall have a seat on the Panel for Educational Policy and the right to speak, but **not to vote**, on all matters before the Panel." (BYLAWS, PREAMBLE and Article 1, Section 1.1).

Education Law §3020-a(2)(a) gives Arbitrators the authority to hear and decide 3020-a penalties for tenured educators only **after** probable cause has been voted on by the school board in an Executive Session. An arbitrator cannot determine probable cause, and no principal or Superintendent may find probable cause. No law, rule, memo, agreement or other has stated that there is a right to delegate the finding of probable cause for 3020-a charges away from the school

board. Here, the principal signed off on the determination of probable cause, but did not have that authority. No delegation memo addresses this fact. None of the Department's Delegation memos issued before or after Cardinale address "probable cause determinations". No argument or evidence has been submitted by the Defendants in this matter that claims otherwise.

While N.Y. Educ. Law § 2590-f(1)(b) provides that in New York City, the superintendent shall have the power "to delegate any of her or his powers and duties to such subordinate officers or employees of her or his community district as she or he deems appropriate, at his or her sole discretion, and to modify or rescind any power and duty so delegated, the Chancellor only has the authority to delegate the **preferring of charges** (NYS Education Law §2590-h)  against tenured teachers who can then delegate to school principals. The duty to prefer charges is not the same a determining probable cause in Executive Session by a vote of the majority of members of the school board (PEP). No written changes have been made by the State legislature, and there is no waiver of the determination of probable cause by any individual or group other than in an Executive Session and vote by the members of the school board.

The first paragraph of Education Law §2590-h on the duties and responsibilities of the Chancellor, says:

> "The office of chancellor of the city district is hereby continued. Such chancellor shall serve at the pleasure of and be employed by the mayor of the city of New York by contract.   The length of such contract shall not exceed by more than two years the term of office of the mayor authorizing such contract.   The chancellor shall receive a salary to be fixed by the mayor within the budgetary allocation therefor.   **He or she shall exercise all his or her powers and duties in a manner not inconsistent with the city-wide educational policies of the city board [PEP].**   (emphasis added)
>
> "……. The Chancellor shall serve as a non-voting ex-officio member of the Panel for educational Policy."

The denial and/or omission of a proper determination of probable cause in violation of Education Law 3020-a(2)(a) which led to Plaintiff's termination is an unlawful result of the improper interpretation of the statutory language and legislative intent of the tenure law (see Matter of Belmonte v Snashall, 2 NY3d 560, 566 [2004]). The main goal in statutory construction is to discern the will of the Legislature and, as the clearest indicator of legislative intent is the statutory text, the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof. The intent of the New York State Legislature to keep the discipline of teachers separate from their contractual rights is seen in the fact that Section 3020-a is codified in Education Law Article 61, whereas Section 2590 is placed in Education Law Article 52(a).

This placement dichotomy is not a trivial distinction, but rather reflects a legislative determination (and intent) to separate the powers of the Chancellor from the statutory due process template applicable to the termination of tenured teachers. Termination is a vital and valued contractual right for tenured teachers, and stands independent (and separate and apart) from the Education Law article (Article 52(a)) addressing mayoral control of city schools. Tenured teachers were clearly not the intended target (or subject) of those legislators who granted former Mayor Michael Bloomberg the powers he sought to take back from the former Board of Education.

Defendants' Motions omit any discussion of the State Legislature's noticeable failure to amend Education Law Section 3020-a to include a provision detailing the removal of tenured personnel. If, as the Department suggests, the Legislature intended to dramatically alter the prophylactic protection enjoyed by tenured pedagogues, it would have done so both clearly, and

unequivocally - i.e. a new subdivision for cities of one million or more would have sequentially followed subd. (2), and trumpeted such a tectonic change. It, however, doesn't.

The clear "upshot" is that the State Legislature intended to permit delegation of all ministerial tasks, duties, and responsibilities, except that of the termination of employment of tenured faculty and principals, retaining them in 3020-a. Nothing contained in the Legislation authorizing mayoral control suggests the Legislature knew (much less sanctioned) the power to initiate termination by a downward delegation to a mere school principal. Indeed, such lesser tasks as reviewing unsatisfactory ratings are conducted by designated hearing officers, and reviewed by a deputy Schools Chancellor at Tweed.

Finally, there are now two distinct versions of pedagogical due process in New York State. For those teachers in the 57 counties outside New York City, the traditional 3020-a due process applies with high level review required before a principal's termination application is initiated. Once one, however, crosses the NYC borders, that modicum of due process simply evaporates, and school principals act as the equivalent of a pedagogical grand jury, two separate systems existing side by side dependent solely if the teacher works for the NYCDOE  or elsewhere. This distinction creates a suspect classification (and disparate treatment), denying New York City teachers equal protection of the law, as guaranteed by Article 1, Section 11 of the New York State Constitution (see Board of Education Levittown Union Free School District v. Nyquist, 83 A.D. 217,443 N.Y.S 2d 843 [2nd Dept. 1981]).

Defendants' failure to cite the existence of any legislative intent supporting a "delegation" theory is telling. No legislative "floor debate" is cited, no bill "sponsor's memo" referenced, no "signing statement" by the Governor cited. In sum, Defendants in this case never

mentioned this fact in their Motions to Dismiss. Defendants' Motions are, therefore, deficient as a matter of law and must be denied.

### POINT III: PLAINTIFF'S FOURTEENTH AMENDMENT STIGMA PLUS STATES A CAUSE OF ACTION

The Courts have held that a Plaintiff's claims can be dismissed for failure to state a claim only if the Court finds that "it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Ruotolo v. City of New York, 514F. 3d 184 (2008) quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). A facially plausible claim is one where the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Where the court finds well-pleaded factual allegations, it should assume their veracity and determine whether they plausibly give rise to anentitlement to relief.  Iqbal, 129 S. Ct. at 1950.

At all relevant times the NYC DOE has kept the names and personnel file numbers of employees - who have been charged with any number of minor infractions or who have spoken out about wrong-doing by administrators - on a list called the "Problem Code" or "Ineligible Inquiry  List" which is sent to the New York State Division of Criminal Justice Services ("DCJS") and the Federal Bureau of Investigation ("FBI") National database. Defendants mislead this Court when they wrote that no one is ever told of this list. Any principal who places a prospective employee into Galaxy is told that the individual can/cannot be hired because of a flag on his or her fingerprints. It is also not uncommon for a school administrator to call Human Resources at the NYDOE and ask if a person is flagged or not, and HR will tell them.

15

There  is no information on the procedures used, no standards for placement on this list, and no method by which a person so placed may remove his/her name from this list. Key to the unfairness of this code is the fact that the Department places any and all educators on this Blacklist when he or she is charged, not when he or she is confirmed guilty of any charges or given a penalty after a hearing. Under this umbrella, all accused are guilty when charged, and must try to prove his/her innocence.

Upon information and belief, teachers do not get off of the problem code list once assigned. What can occur is, an employee at the Defendant's Office of Professional Investigations (OPI) will meet with the affected teacher and "interview" him/her if the person has been appointed to a job within the Department. OPI then decides whether the flag on the fingerprints can or cannot be lifted. There is no known relief without a challenge in Court. Further, upon information and belief, more than 97% of all visits to OPI are denied removal from the list and told that they cannot re-apply  for 12 months. The teachers placed in this list cannot get a job  during that time, and there is no grievance, hearing  or meeting that any affected teacher can request. As a result of the code, Plaintiff cannot obtain any job at the Department of Education and thus she is stigmatized and unable to work in NYC public schools. In addition, due to being on this list, Plaintiff cannot work at most other private schools in New York City; therefore, Plaintiff's job prospects and ability to work in New York City are for all practical purposes non-existent.

As a result, Plaintiff is barred from taking advantage of any teaching job opportunities, as she found out when she tried to get a job in New York City after she was terminated. The damages are the result of the Arbitrator at Plaintiff's 3020-a arbitration being allowed to proceed despite an omission in the charging procedures of a proper and lawful determination of probable

cause. The damages to Plaintiff's life and career are permanent, but not because she committed a terrible crime or harmed a child. The omission of probable cause in the charging procedures for §3020-a arbitration in New York City allows the Department to bring charges against a tenured educator that are serious and valid for any number of legitimate or illegitimate reasons. The punishment of her fingerprints being flagged does not equal any alleged misconduct she committed.

Plaintiff's claim of intentional emotional distress  (IIED) in her Complaint is the result of the facts cited herein, namely that she has lost her career and livelihood for an invalid set of allegations for which she was found guilty without a finding of probable cause. She was a terrific teacher yet has been left without a salary to support her and her family for no lawful reason.

An individual is not deprived of liberty as a result of defamation by the government alone; a liberty interest is implicated only when the defamation is coupled with an "alter[ation]" or "extinguish[ment]" of a "right or status." Paul v. Davis, 424 U.S. 693, 711 (1976). Thus, a "serious additional harm, such as loss of employment, as a result of the defamatory remarks by a government official" must be established before defamation may be deemed a constitutional deprivation. Komlosi v. N.Y. State Office of Mental Retardation and Developmental Disabilities. 64 F.3d 810, 817 (2d Cir. 1995). The legal standard has been referred to as the "stigma-plus" test: a liberty interest is implicated by public defamation coupled with the termination or loss of some legal right or status. See Neu v. Corcoran, 869 F.2d 662, 667 (2d Cir.1989) ("[D]efamation . . . is not a deprivation of a liberty interest unless it occurs in the course ofdismissal or refusal to rehire the individual as a government employee.").
To satisfy the stigma-plus test, Plaintiff must allege: (1) the utterance of a defamatory statement about her that "is injurious to her reputation, that is capable of being proved false, and

that . . . she claims is false," and (2) "some tangible and material state-imposed burden . . . in addition to the stigmatizing statement." Doe v. Dep't of Pub. Safety ex rel. Lee, 271 F.3d 38, 47 (2d Cir. 2001), rev'd on other grounds, Conn. Dep't of Pub. Safety v. Doe, 538 U.S. 1(2003); see also Paul, 424 U.S. at 701-702. The defamatory statement need not actually "create" an injury to Plaintiff's reputation to be actionable; instead, the mere "threat" of such injury is sufficient to satisfy the first prong of the stigma-plus test. Velez v. Levy, 401 F.3d 75, 87 (2d Cir. 2005). See, e.g., Brandt v. Bd. of Coop. Educ. Servs., 820 F.2d 41, 43 (2d Cir. 1987) (requiring the defamatory remarks to be of the type "`that *might* seriously damage [her] standing and associations in [her] community' or that *might* impose `on [her] a stigma or other disability that foreclose[s] [her] freedom to take advantage of other employment opportunities'"), quoting Bd. Of Regents of State Colls. v. Roth, 408 U.S. 564, 573(1972) (emphasis added).

In the case at hand, Plaintiff has plead facts to establish a prima facie case of stigma plus based on the placement of her name in the DOE's ineligible list. In Donato v Plainview-Old Bethpage Central School District, 96 F.3d 623, (2nd Cir. 1995) the United States Court of Appeals, Second Circuit, held that an individual may be entitled to a "name-clearing hearing." In this instance the court decided that Donato, who was terminated during her probationary period, was entitled to a name-clearing hearing because the statements made concerning her performance in the job impugn her professional reputation in such a fashionas too effectively put a significant roadblock in her continued ability to practice his or her profession. In Donato's case, said the court, her allegations had satisfied the test as the comments made concerning her performance were " . . .  so harsh as to be likely to persuade any other schoolboard not to hire [her] as a supervisor."  In addition, courts have ruled that a name-clearing hearing is warranted even if there has been no publication concerning the reason for the employee's dismissal in cases

where it determines that discharging the employee for the reasons stated does, in fact, stigmatize the individual and may adversely affect the individual's prospects for future employment.  Here, there is no doubt, in light of the allegations, Petitioner's career in the education  field is over in New York City due to the listing of Plaintiff on a problem code list.

Another case where dissemination was not required was in Knox v New York City Dept. of  Educ. 2011 NY Slip Op 04735 Decided on June 7, 2011 Appellate Division, First Department.  The Court held that Petitioner demonstrated "stigma plus", i.e., defamation by the government, coupled with a likelihood of dissemination of the stigmatizing material that could significantly impair her ability to gain employment as a school psychologist in the future (see Matter of Swinton v. Safir, 93 NY2d 758, 763-765 [1999]). Thus, Plaintiff in this matter should be entitled to proceed with her case to hopefully clear her name by getting removed from the Blacklist, the "Problem Code", which has stigmatized her.

With regard to Defendants' claim that Plaintiff did not plausibly allege that the UFT was a "state actor," a private actor acts under color of state law when the private actor 'is a willful participant in joint activity with the State or its agents.'" See, Ciambriello v. Cnty. of Nassau, 292 F.3d 307, 324 (2d Cir. 2002) (quoting, Adickes v. S.H. Kress & Co., 398 U.S. 144, 152, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970)). The Plaintiff must show that the private actor and the state "share some common goal to violate the plaintiff's rights." See, Betts v. Shearman, 751 F.3d 78, at 85, 2014 U.S. App. LEXIS 8373, 2014 WL 1717091.  "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." See, Wyatt v. Cole, 504 U.S. 158, 161, 112 S. Ct. 1827, 118 L. Ed. 2d 504 (1992). "Section 1983 creates no substantive rights; rather, it provides a 'mechanism for enforcing a right or benefit established elsewhere.'" See,

Baez v. JetBlue Airways, 745 F. Supp. 2d 214, 221 (E.D.N.Y. 2010) (quoting, Morris-Hayes v. Bd. of Educ., 423 F.3d 153, 159 (2d Cir. 2005)). "In order to state a cause of action under 42 U.S.C. § 1983, a plaintiff must allege that some person acting under color of state law deprived [her] of a federal right." See, Washington v. James, 782 F.2d 1134, 1138 (2d Cir. 1986).  "A private party also acts under color of state law if it conspires with state actors to deprive someone of his or her constitutional rights." See, Baez v. Jetblue Airways, 745 F. Supp. 2d 214, at 221, 2010 U.S. Dist. LEXIS 109895 (citing, Adickes v. S.H. Kress & Co., supra, 398 U.S. 144, 152, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970)). In such a case, "there must be 'such a close nexus between the State and the challenged private action that seemingly private behavior may be fairly treated as that of the State itself.'" Id. (quoting, Tancredi v. Metro. Life Ins. Co., 316 F.3d 308, 312 (2d Cir. 2003).

The Defendants know that they are deliberately denying tenured teachers their tenure rights under Education Law 3020-a, namely to have a fair and impartial assessment of their work at a due process hearing, and to have their jobs protected from the whims and fancy of principals and/or superiors, including Superintendents and school boards.  "[I]n order to survive a motion to dismiss on [her] § 1983 conspiracy claim, [Plaintiff] must allege (1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." See, Ciambriello v. County of Nassau, 292 F.3d 307, at 324-25, 2002 U.S. App. LEXIS 10722, 170 L.R.R.M. 2173 (2d Cir. 2002); Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993) (abrogated on other grounds by Leatherman v. Tarrant County Narcotics Intelligence & oordination Unit, 507 U.S. 163, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993)). Private persons who are not state actors "can be liable under §1983 if they conspired with officials who are acting under the color of state law to

deprive a person of a right secured by the Constitution." See, Pollack v. Nash, 58 F. Supp. 2d 294, at 305, 1999 U.S. Dist. LEXIS 11663. This is clearly what happened in the case at bar, when the UFT/NYSUT Attorney threatened Plaintiff if she spoke about the Cardinale case. The Defendants knowingly conspired to silence any discussion at a 3020-a arbitration about the improper determination of probable cause and lack of subject matter jurisdiction in order to promote their agenda of terminating Plaintiff.

Plaintiff alleges facts sufficient to survive the Motions to Dismiss as to the §1983 claim. In her Second Amended Complaint, Plaintiff substantially alleges that Defendants acted in concert with state actors to deprive her of her rights. As to the events she alleged therein, Plaintiff states that private actor Defendant knowingly gave false statements to state actors with the intention of having Plaintiff removed from her position and that Plaintiff was subjected to a 3020-a examination, because of these false accusations. Any ill intent is expressly attributed to both the private and state Defendants. Plaintiff alleges sufficient joint activity with Defendants and the state and that Defendants and state actors were jointly engaged in a plan to deprive Plaintiff of her rights; and particularly that this joint engagement had been utilized many times before to terminate a school employee. Plaintiff was terminated because of Defendants' reliance on erroneous reports of Plaintiff's "misconduct" at the school, and these allegations alone are sufficient to sustain Plaintiff's §1983 claim as private actors who provide false information to a state actor under the color of state law. Therefore, Plaintiff's § 1983 claims should be upheld and the Defendants' motion should be denied.

## POINT IV: THE STATUTE OF LIMITATIONS HAS NOT EXPIRED ON ALL CAUSES OF ACTION OTHER THAN FRAUD

Under general principles of law, a cause of action accrues when conduct that invades the rights of another has caused injury. When the injury occurs, the injured party has the right to

bring suit for all of the damages, past, present and future, caused by the defendant's acts. See, Restatement (Second) of Torts §§ 899, 910 (1977). Here, Plaintiff has presented evidence of a "continuing wrong," which is "deemed to have accrued on the date of the last wrongful act." See, Leonhard v. United States, 633 F2d 599, 613 [2d Cir. 1980], cert denied 451 US 908, 101 S Ct 1975, 68 L Ed 2d 295 [1981]; Harvey, supra, 34 AD3d at 364. Moreover, "in determining which statute of limitations is applicable to a cause of action, it is the essence of the action and not its mere name that controls." See  Krog Corp. v. Vanner Group, Inc., 158 AD3d 914, 919, 72 N.Y.S.3d 178 [2018].

Nonetheless, even assuming arguendo that this Court would otherwise consider these claims time barred, in cases, such as this, where causes of action have been fraudulently concealed, the statute of limitations is tolled until the action is, or could have been, discovered through the exercise of due diligence. A plaintiff may avail itself of the doctrine of equitable tolling if they can show that the elements of fraudulent concealment have been met. See, In re Merrill Lynch Limited Partnerships Litigation, 154 F.3d 56, 60 (2d Cir. 1998); DLT Resources, Inc., v. Credit Lyonnais Rouse, Ltd., 2001 U.S. Dist. LEXIS 87, 2001 WL 25695 (S.D.N.Y. 2001). The Court in Rotella v. Wood, (528 U.S. 549, 120 S. Ct. 1075, 145 L. Ed. 2d 1047, 2000 U.S. LEXIS 1537, 68 U.S.L.W. 4153, 2000 Cal. Daily Op. Service 1357, 2000 Daily Journal DAR 1905, 2000 Colo. J. C.A.R. 952, 13 Fla. L. Weekly Fed. S 127), noted that… "As a basic rule, we do not unsettle the understanding that federal statutes of limitations are generally subject to equitable principles of tolling, and where a pattern remains obscure in the face of a plaintiff's diligence in seeking to identify it, equitable tolling may be one answer to the plaintiff's difficulty…." Id. (citations omitted).

Defendants knew that there was no Executive Session and vote on probable cause, and

also knew that a waiver was needed to officially go around this mandatory requirement in

Education Law. They concealed any waiver, agreement, memo, or other, that could support the

fraudulent procedure, due to the unravelling of the teacher tenure hearings in New York City.

Fraudulent concealment of a secret waiver of the rights of tenured employees to the tenure law

Education Law 3020-a(2)(a) by the NYC Department of Education cannot be sanctioned.

The United States Supreme Court has defined waiver as "an intentional relinquishment or

abandonment of a known right or privilege." Johnson v. Zerbst, 304 U. S. 458, 464 (1938).

Courts should "indulge every reasonable presumption against waiver,  Aetna Ins. Co. v.

Kennedy, 301 U. S. 389, 393 (1937), and they should "not presume acquiescence in the loss of

fundamental rights," Ohio Bell Tel. Co. v. Public Utilities Comm'n,301 U. S. 292, 307 (1937).

In Carnley v. Cochran, 369 U. S. 506 (1962), the Court held:  "Presuming waiver from a silent

record is impermissible. The record must show, or there must be an allegation and evidence

which show, that an accused was offered counsel but intelligently and understandably rejected

the offer. Anything less is not waiver." Id., at 516. Additionally, a waiver of a teacher's tenure

rights must be knowingly and freely given (Matter of Gould v. Bd. of Educ. of the Sewanhaka

CHSD, et al., 81 NY2d 446; Matter of Abramovich v. Bd. of Educ. of the Three Villages CSD

No. 1, 46 NY2d 450).

If a Plaintiff can satisfy the elements of fraudulent concealment, then the statute of

limitations may be tolled. A Plaintiff may prove fraudulent concealment sufficient to toll the

running of the statute of limitations if he/she establishes (1) that the defendant concealed from

him/her the existence of his cause of action, (2) that he/she remained in ignorance of that cause

of action until some point within three years of the commencement of his/her action, and (3) that

his/her continuing ignorance was not attributable to a lack of diligence on his/her part. See, State

of New York v. Hendrickson Brothers, Inc., 840 F.2d 1065 (2d Cir. 1988) cert. denied, 488 U.S. 848, 102 L. Ed. 2d 101, 109 S. Ct. 128 (1988). The purpose of this doctrine "is to prevent a defendant from 'concealing a fraud, or . . . committing a fraud in a manner that it concealed itself until such time as the party committing the fraud could plead the statute of limitations to protect it.'' See, Hendrickson Bros., 840 F.2d at 1083 (quoting, Bailey v. Glover, 88 U.S. 342, 349, 22 L. Ed. 636 (1874)). A plaintiff may prove the concealment element in one of two ways: (a) the defendant took affirmative steps to prevent the plaintiff from discovering the claim or injury, or (b) the wrong itself was of such a nature as to be self-concealing. See, New York v. Hendrickson Bros., Inc., supra; see also, In re Nine West Shoes Antitrust Litigation, 80 F. Supp. 2d 181, 192 (S.D.N.Y. 2000) ("Circuit has adopted the more lenient standard requiring plaintiffs to prove concealment by showing either that the defendants took affirmative steps to prevent plaintiffs' discovery of the conspiracy, or that the conspiracy itself was inherently self-concealing."). Notably, Plaintiff has sufficiently alleged that the erroneous characterizations and assessments on her permanent record with the Department would be seen by anyone reviewing her record and will prevent her from obtaining administrative positions in education. The Problem Code was concealed from her until after her termination.

### POINT V: THE PLAINTIFF HAS SUFFICIENTLY STATED A CAUSE OF ACTION FOR FRAUD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" See, Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." Id. A court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level." See, Twombly, supra, 550 U.S. at 555.

The task of the court in ruling on a motion to dismiss is to "assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." See, In re Initial Pub. Offering Sec. Litig., 383 F. Supp. 2d 566, 574 (S.D.N.Y. 2005) (internal quotation marks and citation omitted). The court must accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiffs favor. See, Chambers v. Time Warner. Inc., 282 F.3d 147, 152 (2d Cir. 2002).

Plaintiff's Second Amended Complaint and her arguments herein are wrought with specific accounts of the false material representations presented by the Defendants as truth, as well as Defendants' misconduct in manipulating the information required by Education Law 3020-a to give an arbitrator subject matter jurisdiction to hear a case. Further, Defendants' collective actions constitute acts of deception and manipulation, by concealment, and commission, in generating, and assisting in generating repeated false and misleading statements and information in violation of Plaintiff's due process and civil rights.

Indeed, had Plaintiff known that she would be forced into silence by her own Representative and Union Attorney, she would have filed an action in PERB against him, as well as this lawsuit against the Department immediately upon being terminated. Her defense at her 3020-a hearing was never heard because the Defendants had their own secret narrative for her life and career.

**POINT VI: PLAINTIFF'S CLAIMS ARE NOT BARRED BY THE DOCTRINE OF COLLATERAL ESTOPPEL**

Defendants use the dismissal of Plaintiff's Article 75 in the Supreme Court, filed after she was terminated at the end of her §3020-a hearing, to make the argument that she cannot litigate the same issues here. Essentially, they are claiming collateral estoppel however, they are wrong. Nonetheless, in this opposition, the term "collateral estoppel" is used for all the Defendants' arguments as contained in their Motions to Dismiss, stating that Plaintiff had no right to further litigate the issues cited herein.

Plaintiff never argued her denial of Constitutional rights to a proper determination of probable cause at her 3020-a arbitration nor in her Article 75 Petition. Her UFT/NYSUT Attorney threatened to quit as her Representative at the §3020-a if she brought up the Cardinale ruling by Judge Desmond Green.  As Plaintiff could not hire a private attorney, and she did not feel comfortable taking on the case herself pro se, she was silent on the omission of a vote in an Executive Session and the lack of subject matter jurisdiction of the arbitrator to hear her case. The doctrine of collateral estoppel bars re-litigation of a legal or factual issue that was previously decided in a prior action where: "(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was [a] full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits." Grieve v. Tamerin, 269 F.3d 149, 153 (2d Cir. 2001); *quoting* United States v. Hussein, 178 F.3d 125, 129 (2d Cir. 1999). While the Second Circuit has held that the findings reached through section §3020-a hearings, which are quasi-judicial administrative actions, are entitled to preclusive effect, (*see* Burkybile v. Bd. of

Educ., 411F. 3d 306, 308 (2d Cir. 2005), for collateral estoppel to bar the litigation of an issue in a subsequent action, the elements set forth above must still be met.

The party asserting a bar to a cause of action, here the Defendants, have the burden of identifying the issues and the necessity of the claim having been litigated in the prior action. *See* In re Sokol, 113 F.3d 303, 306 (2d Cir. 1997). Further, "[a]n opportunity to contest fully the merits of the issue is a prerequisite for the application of collateral estoppel under both federal and New York state law." Industrial Risk Insurers v. Port Authority of NY and NJ, 493, F.3d 283, 287 (2d Cir. 2007). It is must be noted that collateral estoppel, "is an equitable doctrine, not a matter of absolute right; its invocation is influenced by considerations of fairness in the individual case." King v. Fox, 418 F.3d 121 (2d Cir. 2005).

Collateral estoppel applies only if "the issue in question was actually and necessarily decided in a prior proceeding." Senno v. Elmsford Union Free Sch. Dist., 812 F. Supp. 2d 454, 471 (S.D.N.Y. 2011); *citing* Colon v. Coughlin, 58 F.3d 865, 869 (2d Cir. 1995). The recent decision in the Court of the Southern District of New York, Senno, is on point with the issues in the instant matter. Specifically, Senno notes that it is undisputed that where a 3020-a hearing did not directly address Plaintiff's claims of retaliation or discrimination, Plaintiff is not estopped from bringing those claims in a subsequent action. Senno at 471. Specifically, where "Plaintiff's retaliation claim was expressly not decided at the hearing, he is not estopped from pursuing that claim now. Id. *Citing to* Morey v. Somers Cent. School Dist., No. 06 Civ 1877, 2007 WL 867203, *5 (S.D.N.Y. Mar. 21, 2007) (holding that where "the record of administrative hearing is devoid of any evidence that the retaliation was actually litigated and necessarily decides," collateral estoppel did not bar the plaintiff's retaliation claims); *see also* Raniola v. Bratton, 243 F.3d 610, 624 (2d Cir. 2001) (holding that an administrative finding concerning a plaintiff's

termination "could have preclusive effect on her Title VII claim in federal court only if [she] had unsuccessfully sought to contest her discharge...leading to a judgment on the *same claim or issue*" (emphasis added)).

The issues presented at Plaintiff's §3020-a hearing are not identical to the claims in this instant action. Probable cause was never brought up to Arbitrator O'Connell, and thus were precluded from being raised in the subsequent Article 75.  Even if the issue of probable cause had been brought up at the 3030-a arbitration, the Arbitrator had no authority to hear the arguments concerning the determination at an Executive Session or not. Defendants did not show that any of the issues brought here were discussed or decided in the arbitration or in the Supreme Court. Therefore, the Defendants have failed to meet their burden of showing such and thus Plaintiff cannot be barred from litigating these claims here. Plaintiff's claims are ripe to be heard by this Court.


**CONCLUSION**

Plaintiff respectfully submits that Defendants' Motions be denied and any other relief that is just and equitable.

Dated: New York, New York
      November 3, 2021

          Respectfully submitted,
          MASON LAW, PLLC.

          ***/s/ D. Christopher Mason, Esq***
          D. Christopher Mason, Esq.
          11 Broadway – Suite 615
          New York, NY10004
          (212) 498-9691