UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FELICIA ALTERESCU,

                              Plaintiff,

                    -v.-

NEW YORK CITY DEPARTMENT OF EDUCATION,
RICHARD CARRANZA, and UNITED FEDERATION
OF TEACHERS,

                              Defendants.

---

21 Civ. 925 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

Plaintiff Felicia Alterescu is a former New York City public school teacher who has sued the New York City Department of Education ("DOE"); its former Chancellor Richard Carranza (together with DOE, the "City Defendants");[1] and her former union, the United Federation of Teachers ("UFT" or the "Union," and together with the City Defendants, "Defendants"), alleging a variety of constitutional and state-law violations premised on the process through which she was terminated.  Defendants now move to dismiss the case for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons set forth below, the Court grants Defendants' motions to dismiss.

---

[1]     The current DOE Chancellor is David C. Banks.  However, given the Court's resolution of Defendants' motions, it will not substitute Chancellor Banks into this case pursuant to Federal Rule of Civil Procedure 25(d).

## BACKGROUND[2]

### A.    Factual Background

### 1.    Plaintiff's Career as a New York City Public School Teacher

Plaintiff began working as a classroom teacher for the DOE in 1992.

(SAC ¶ 11).  Just three years later, she was granted tenure.  (*Id.* at ¶ 12).

Plaintiff avers that during her entire time as a DOE employee, she was a

member of the United Federation of Teachers, Local 2, American Federation of

Teachers.  (*Id.* at ¶ 16).[3]  As a member of UFT, her conditions and terms of

---

[2]    This Opinion draws its facts from the Second Amended Complaint ("SAC" (Dkt. #19)), the well-pleaded allegations of which are taken as true on this motion.  *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).  The Court also relies, as appropriate, on certain exhibits attached to the Declaration of Lauren A. Rosenfeld ("Rosenfeld Decl., Ex. [ ]" (Dkt. #25)).  Among these exhibits is a copy of the New York Supreme Court's decision on Plaintiff's Article 75 petition in *Matter of Alterescu* v. *Dep't of Educ. of the City Sch. Dist. of the City of N.Y.*, 2019 NY Slip Op. 30476(U), 2019 WL 934930 (N.Y. Sup. Ct. Feb. 26, 2019) (Rosenfeld Decl., Ex. A), and the hearing officer's determination in Plaintiff's hearing pursuant to N.Y. Educ. Law § 3020-a (*id.*, Ex. B).  The Court finds that it may take judicial notice of these documents.  *See Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (noting that on a motion to dismiss, courts may consider "facts stated on the face of the complaint, ... documents appended to the complaint or incorporated in the complaint by reference, and ... matters of which judicial notice may be taken" (internal quotation marks omitted)); *Chambers* v. *Time Warner*, 282 F.3d 147, 153 (2d Cir. 2002) ("Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint."); *Sternkopf* v. *White Plains Hosp.*, No. 14 Civ. 4076 (CS), 2015 WL 5692183, at *4 (S.D.N.Y. Sept. 25, 2015) (considering a plethora of documents submitted by defendants, including EEOC charges and agency determinations, reasoning that courts may take judicial notice of such public documents and the documents were otherwise incorporated into the complaint or integral to it).

For ease of reference, the Court refers to the City Defendants' memorandum of law in support of their motion to dismiss as "DOE Br." (Dkt. #26) and their reply memorandum of law as "DOE Reply" (Dkt. #34); UFT's memorandum of law in support of its motion to dismiss as "UFT Br." (Dkt. #29) and its reply memorandum of law as "UFT Reply" (Dkt. #33); and Plaintiff's consolidated memorandum of law in opposition to Defendants' motions as "Pl. Opp." (Dkt. #30).

[3]    The SAC refers to both the New York State United Teachers ("NYSUT") and UFT.  In its opening brief, Defendant UFT notes that

> NYSUT and the UFT are separate legal entities, with the UFT being a local affiliate of NYSUT. Accordingly, UFT members (who are, through such affiliation, also members of NYSUT), who are brought

employment with DOE were governed by the collective bargaining agreement ("CBA") between the Union and New York City (the "City"). (*Id.* at ¶¶ 16-17).

On November 1, 2017, Plaintiff was served with Section 3020-a specifications. (SAC ¶ 19; Rosenfeld Decl., Ex. B at 2-4). These specifications functioned as DOE's disciplinary charges against Plaintiff for various alleged violations of school and DOE policies. (*Id.*). In broad summary, the specifications charged Plaintiff with (i) failure to attend a parent-teacher conference; (ii) failure to attend eight professional development meetings; and (iii) failure to punch her timecard on three occasions. (SAC ¶ 19; Rosenfeld Decl., Ex. B at 3). Of potential note, Superintendent Danielle DiMango — rather than the Panel for Educational Policy ("PEP," also known as the New York City Board of Education) through the vote of an executive session — signed off on what Plaintiff contends to be "specious charges" "without any legal authority." (SAC ¶ 3).

### 2. Plaintiff's Section 3020-a Hearing, Article 75 Proceeding, and Termination

Plaintiff's disciplinary hearing commenced on March 27, 2018, nearly five months after service of the Section 3020-a specifications. (SAC ¶¶ 19, 28). This hearing was held over six days between March and April 2018. (*Id.* at ¶ 28; Rosenfeld Decl., Ex. B at 2). Approximately one month after the final

---

up on disciplinary charges pursuant to N.Y. Educ. Law § 3020-a may seek to [have] NYSUT legal counsel assist in their defense free of charge.

(UFT Br. 4 n.2). For the sake of simplicity, and because Plaintiff has named only UFT as a defendant, the Court will refer to both entities as "UFT" when discussing allegations concerning the Union.

hearing date, Hearing Officer Mary O'Connell rendered her decision as to the specifications against Plaintiff. (SAC ¶ 29; Rosenfeld Decl., Ex. B). That decision found Plaintiff guilty of two specifications, dismissed three other specifications, and ultimately determined that the appropriate penalty was termination. (Rosenfeld Decl., Ex. B at 36).

Plaintiff alleges that she had a fraught relationship with her UFT-provided lawyer in the run-up to the hearing. (SAC ¶¶ 26-27). Specifically, Plaintiff alleges that she learned about a favorable New York Supreme Court case — *In re Cardinale* v. *N.Y.C. Dep't of Educ.*, No. 85165/2017, 2018 WL 2084164 (N.Y. Sup. Ct. Apr. 3, 2018) — that she believed could vindicate her position that the PEP, rather than the DOE Chancellor or another supervisory authority, was required to make a probable cause finding against her prior to any hearing. (*Id.*). Plaintiff urged her UFT lawyer to submit a motion to dismiss the charges against her on this basis. (*Id.* at ¶ 27). By letter dated April 23, 2018, the Union informed Plaintiff that it would "never cite the *Cardinale* case … [and] that if she continued to ask for this case to be argued, [the Union] would withdraw from representing her." (*Id.*). Plaintiff claims that she felt "scare[d] … into silence" by UFT's decision, but that she did not retain a new lawyer because she could not afford to hire one. (*Id.*).

Following the hearing officer's disposition of her case, Plaintiff filed an Article 75 petition to the New York Supreme Court. (SAC ¶ 32; Rosenfeld Decl., Ex. A). Plaintiff raised four challenges to the hearing officer's decision: (i) termination was disproportionate to the sustained specifications;

4

(ii) termination was "shocking to the conscience"; (iii) the hearing officer abused her discretion by considering matters not encompassed by the specifications; and (iv) the hearing officer's decision was arbitrary and capricious. (SAC ¶ 32). DOE moved to dismiss Plaintiff's petition, but the motion was denied by Judge John Kelley. (*Id.* at ¶ 33; Rosenfeld Decl., Ex. A). Instead, Judge Kelley considered Plaintiff's petition on the merits and ultimately denied it. (*Id.*).

Plaintiff alleges that, following her termination, she was placed on the "Ineligible/Inquiry" or "no hire" list maintained by DOE. (SAC ¶ 4). She further avers that her fingerprints were sent to the New York State Division of Criminal Justice Services and the Federal Bureau of Investigation, resulting in her being "permanently marked with a PC, problem code." (*Id.* at ¶ 4 (internal quotations omitted)). Ostensibly as a result of the "stigma of the flag on her fingerprints[,]" Plaintiff has not received any responses to various applications she has submitted for both private and public sector jobs. (*Id.* at ¶ 34).

## B.   Procedural Background

Plaintiff initiated this case in New York Supreme Court by filing a summons with notice docketed on November 23, 2020. (Dkt. #5, Ex. A). The City Defendants, with the backing of UFT, removed the case to this Court on February 5, 2021, invoking the Court's federal question jurisdiction. (Dkt. #5). On June 7, 2021, Plaintiff filed her First Amended Complaint. (Dkt. #12). UFT then submitted a pre-motion letter indicating its intention to move to dismiss the First Amended Complaint for failure to state a claim on July 15, 2021 (Dkt. #13), and the City Defendants followed suit five days later (Dkt. #14). Plaintiff

opposed Defendants' contemplated motions by letter response to the Court dated July 19, 2021. (Dkt. #15). Based on the parties' consensus view that a pre-motion conference would not fruitful, the Court ordered the parties to meet and confer regarding a proposed briefing schedule, and to submit said schedule to the Court. (Dkt. #16).

On July 30, 2021, the parties submitted a proposed briefing schedule for Defendants' anticipated motions to dismiss, and indicated that Plaintiff would file a further amended complaint by August 26, 2021. (Dkt. #17). The Court endorsed this schedule on August 2, 2021. (Dkt. #18). Plaintiff then filed her Second Amended Complaint (the "SAC") — the operative complaint in this case — on August 26, 2021. (Dkt. #19). On October 6, 2021, the City Defendants and UFT filed their separate motions to dismiss and supporting papers. (Dkt. #24-29). Plaintiff then filed her consolidated opposition on November 3, 2021. (Dkt. #30). Defendants submitted their replies on November 30, 2021. (Dkt. #33-34). Accordingly, Defendants' motions to dismiss are fully briefed and ripe for the Court's review.

## DISCUSSION

### A.    Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), plaintiffs must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).  When evaluating the viability of plaintiffs' claims, the Court must accept as true all well-pleaded factual allegations contained in the operative complaint.  *Id.*  That said, the Court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein* v. *UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013).

## B.    Plaintiff Has Abandoned Several Claims

As a preliminary matter, the Court finds that Plaintiff has abandoned several of her claims.  "'When a party fails adequately to present arguments' in a brief, a court may properly 'consider those arguments abandoned[.]'" *Malik* v. *City of New York*, 841 F. App'x 281, 284 (2d Cir. 2021) (summary order) (quoting *State St. Bank & Tr. Co.* v. *Inversiones Errazuriz Limitada*, 374 F.3d 158, 172 (2d Cir. 2004)).  This is true whether the procedural posture is a motion to dismiss or a motion for summary judgment.  *Id.* (affirming district court's conclusion that plaintiff abandoned constitutional claims against non-government actor because "his opposition brief failed to address [the] argument that [defendant] was not a state actor for purposes of § 1983"); *see also Jackson* v. *Fed. Exp.*, 766 F.3d 189, 198 (2d Cir. 2014) (holding that "in the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition [to summary judgment] that relevant claims or defenses that are not defended have been abandoned").  Courts within this Circuit routinely dismiss with prejudice claims at the motion to dismiss stage that are not defended and deemed abandoned.  *See, e.g.*, *Manes* v. *JPMorgan Chase Bank,*

*N.A.*, No. 20 Civ. 11059 (VEC), 2022 WL 671631, at *5 n.9 (S.D.N.Y. Mar. 7, 2022); *Informed Consent Action Network* v. *Becerra*, No. 21 Civ. 4134 (ALC), 2022 WL 992814, at *5 n.4 (S.D.N.Y. Mar. 31, 2022).

Applying these principles, the Court concludes that Plaintiff has abandoned several of her claims.  Plaintiff's first cause of action in the SAC is for "violation/interference with Constitutionally protected rights" under the First, Fourth, Fifth, and Fourteenth Amendments.  (SAC ¶¶ 37-45 (first cause of action)).  But nowhere in the SAC or Plaintiff's opposition does she address — even in conclusory fashion — any alleged constitutional violations other than Fourteenth Amendment claims.  Plaintiff failed to do so despite the fact that both sets of Defendants moved to dismiss all of the constitutional claims against them.  (UFT Br. 15-19; DOE Br. 5-7).  Likewise, beyond gesturing toward a claim for negligent infliction of emotional distress ("NIED") under the banner of her second cause of action for intentional infliction of emotional distress (SAC ¶¶ 46-49 (second cause of action)), Plaintiff never independently addresses her claim for NIED in the SAC or in her opposition. Accordingly, the Court considers Plaintiff's constitutional claims under the First, Fourth, and Fifth Amendments, and any standalone NIED claim, to be abandoned, and will not address them further in this Opinion.

C.      **The Court Dismisses Plaintiff's Remaining Constitutional Claims**[4]

Plaintiff alleges three constitutional violations in the SAC.  *First*, Plaintiff claims that she was denied due process under the Fourteenth Amendment as a result of the allegedly improper determination of probable cause prior to her disciplinary hearing.  (SAC ¶¶ 38-45).  *Second*, Plaintiff brings a "stigma-plus" claim, alleging that Defendants' "derogatory statements" and placement of Plaintiff on a "Problem Code" list deprived her of a constitutionally-protected property interest.  (*Id.* at ¶¶ 70-76).  *Third*, Plaintiff alleges that Defendants violated the Equal Protection Clause of the Fourteenth Amendment, because the alternative procedures for determining probable cause exist only as to New York City teachers, and not teachers in the rest of the state.  (*Id.* at ¶¶ 50-55).  As set forth below, the Court finds that Plaintiff has not stated a plausible constitutional claim under any of these theories and grants Defendants' motions to dismiss these claims.

---

[4]     Defendants point out that at various points Plaintiff appears to be relitigating issues necessarily decided in her Section 3020-a hearing and Article 75 proceeding.  (*See, e.g.*, UFT Reply 10).  To the extent that Plaintiff attempts to relitigate the propriety of her termination, Defendants are correct that Plaintiff is collaterally estopped from making these arguments.  *See Burkybile* v. *Bd. of Educ. of Hastings-on-Hudson Union Free Sch. Dist.*, 411 F.3d 306, 311-12 (2d Cir. 2005) ("We hold that these facts, taken together, establish that the Section 3020-a hearing is an administrative adjudication that must be given preclusive effect.").  However, to the extent that Plaintiff raises arguments that she did not raise in her Section 3020-a hearing or Article 75 proceeding, such claims are not barred by principles of collateral estoppel.  *See id.* at 313 ("The record does not reflect that any constitutional claims were raised at the Section 3020-a hearing, so we do not take these as decided." (citing *Taylor* v. *Brentwood Union Free Sch. Dist.*, 908 F. Supp. 1165, 1178 (E.D.N.Y. 1995))).

### 1. The Court Dismisses Plaintiff's Constitutional Claims Against UFT

The Court begins with the threshold issue of whether Plaintiff may state a constitutional claim against UFT.  Throughout the SAC, Plaintiff makes no effort to distinguish among Defendants, despite the fact that UFT is not a state actor.  With particular respect to her constitutional claims, Plaintiff suggests that UFT may be treated as a state actor because it was acting "under color of State Law" when it represented her at her Section 3020-a hearing, and is otherwise implicated in Plaintiff's constitutional allegations.  (*E.g.*, SAC ¶ 39).  Separate and apart from contesting the merits of Plaintiff's underlying constitutional claims, UFT argues that (i) labor unions are ordinarily not treated as state actors and (ii) Plaintiff alleges no facts to suggest that UFT conspired with DOE to deprive Plaintiff of a constitutionally-protected right.  (UFT Br. 16-17).  Plaintiff, in response, argues that "Defendants knowingly conspired to silence any discussion at a 3020-a arbitration about the improper determination of probable cause and lack of subject matter jurisdiction in order to promote their agenda of terminating Plaintiff."  (Pl. Opp. 21; *see also id.* at 19-21).

"'Because the United States Constitution regulates only the Government, not private parties,' a litigant … who alleges that her 'constitutional rights have been violated must first establish that the challenged conduct constitutes "state action.""  *Grogan* v. *Blooming Grove Volunteer Ambulance Corps*, 768 F.3d 259, 263 (2d Cir. 2014) (quoting *Flagg* v. *Yonkers Sav. & Loan Ass'n, FA*, 396 F.3d 178, 186 (2d Cir. 2005) (internal quotation marks omitted)).  Section

1983, which supplies the cause of action for Plaintiff's constitutional claims, makes this requirement clear: "Every person who, *under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia*, subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable[.]"  42 U.S.C. § 1983 (emphasis added); *see also McGugan* v. *Aldana-Bernier*, 752 F.3d 224, 229 (2d Cir. 2014) ("To state a claim under § 1983, a plaintiff must allege that defendants violated plaintiff's federal rights while acting under color of state law.").

A plaintiff alleging that a non-state entity has violated her constitutional rights must show that the entity's "challenged actions are 'fairly attributable' to the state." *Fabrikant* v. *French*, 691 F.3d 193, 207 (2d Cir. 2012) (quoting *Rendell-Baker* v. *Kohn*, 457 U.S. 830, 838 (1982)).  A plaintiff satisfies this requirement by showing that "[i] the State compelled the conduct [the 'compulsion test'], [ii] there is a sufficiently close nexus between the State and the private conduct [the 'close nexus test' or 'joint action test'], or [iii] the private conduct consisted of activity that has traditionally been the exclusive prerogative of the State [the 'public function test']." *McGugan*, 752 F.3d at 229 (quoting *Hogan* v. *A.O. Fox Memorial Hosp.*, 346 F. App'x 627, 629 (2d Cir. 2009) (summary order)); *see also Kohlhausen* v. *SUNY Rockland Cmty. Coll.*, No. 10 Civ. 3168 (JSG), 2011 WL 2749560, at *7 (S.D.N.Y. July 13, 2011) ("Because [plaintiff] has not presented sufficient evidence to support an inference that the Union or its agents conspired, prearranged, or otherwise

11

acted in concert with [the state defendant] or its agents such that the Union's actions may be fairly attributable to the State, her equal protection claim against the Union Defendants fails.").

Alternatively, a plaintiff may bring a claim for a Section 1983 conspiracy. *See Ciambriello* v. *Cnty. of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002) (analyzing Section 1983 conspiracy claim and noting that the "issue is very similar to the analysis" of whether actions are attributable to the state); *see also Betts* v. *Shearman*, 751 F.3d 78, 84 n.1 (2d Cir. 2014) ("A Section 1983 conspiracy claim is distinct from one of joint action.").  In order to survive a motion to dismiss a Section 1983 conspiracy claim, a plaintiff must allege "[i] an agreement between a state actor and a private party; [ii] to act in concert to inflict an unconstitutional injury; and [iii] an overt act done in furtherance of that goal causing damages." *Ciambriello*, 292 F.3d at 324-25 (citing *Pangburn* v. *Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999)).  "A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." *Sommer* v. *Dixon*, 709 F.2d 173, 175 (2d Cir. 1983); *accord Yi Sun* v. *N.Y.C. Police Dep't*, No. 18 Civ. 11002 (LTS), 2020 WL 4530354, at *10 (S.D.N.Y. Aug. 6, 2020).  To allege a plausible Section 1983 conspiracy, the facts alleged in the complaint must evince a "meeting of the minds" between defendants.  *Webb* v. *Goord*, 340 F.3d 105, 110 (2d Cir. 2003); *accord Marquez* v. *Hoffman*, No. 18 Civ. 7315 (ALC), 2021 WL 1226981, at *23 (S.D.N.Y. Mar. 31, 2021).

For starters, Plaintiff has not shown that UFT's actions can be fairly attributed to the state.  The SAC itself offers only conclusory allegations in this regard.  (*See, e.g.*, SAC ¶ 39 ("Defendants, under color of State Law, by allowing the administration of plaintiff's school to violate both the UFT contract and Chancellor's Regulations … committed fraud and acted deceitfully.")).  Simply referring to "Defendants" in the plural throughout the SAC does not suffice to allege that UFT and DOE conspired with one another or functionally operated as one to deprive Plaintiff of her constitutional rights.  Nor does alleging that UFT's contract with the City, which allows for the "implementation of a permanent arbitration panel" and various other efficiency-promoting mechanisms, "leads to collusion."  (*Id.* at ¶¶ 24-25).  This arrangement is evidently agreeable to union members, and, in any case, Plaintiff does not explain how it led to collusion in her case.  Likewise, Plaintiff's claim that "[a]ll Defendants were aware that they were misrepresenting the 3020-a arbitration guarantee of 'fairness' and 'tenure protections'" does not suggest that Defendants were acting in concert to deprive Plaintiff of a constitutional right. (*Id.* at ¶ 39).

Plaintiff appears to shift gears in her opposition brief by alleging the existence of a Section 1983 conspiracy, but this effort fares no better. Attempting to transmute a claim of poor representation into one of conspiracy, Plaintiff argues that "[conspiracy] is clearly what happened in the case at bar, when the UFT/NYSUT [a]ttorney threatened Plaintiff if she spoke about the *Cardinale* case," and, further, that "Defendants knowingly conspired … in order

to promote their agenda of terminating Plaintiff." (Pl. Opp. 21). But "[a] merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a [Section] 1983 claim against the private entity." *Ciambriello*, 292 F.3d at 324 (citing *Spear* v. *Town of W. Hartford*, 954 F.2d 63, 68 (2d Cir. 1992)); *see also Butcher* v. *Wendt*, 975 F.3d 236, 241 (2d Cir. 2020) ("[Plaintiff's] allegations in support of his [1983] conspiracy claims of a corrupt agreement between the private defendants and Justice Farneti are uniformly conclusory, speculative, and implausible.").

Even if the Court were to credit Plaintiff's allegations regarding the quality of her representation, they say nothing about an agreement by UFT and DOE to affect her employment. This is particularly true "in light of the adversarial relationship between" DOE and UFT; after all, Plaintiff's UFT lawyer, while disagreeing with her as to case strategy, still remained directly adverse to DOE at the hearing. *Ciambriello*, 292 F.3d at 324 (dismissing claims against union premised on conduct fairly attributable to the state and Section 1983 conspiracy because "the very proceeding in which [plaintiff] alleges that [the union] conspired with the County — the arbitration — placed [the union] and the County in adversarial positions"). This feature of union advocacy partially informs courts' broader finding that "[l]abor unions ... generally are not state actors." *See id.* at 323; *see also Jacobs* v. *Mostow*, 271 F. App'x 85, 88 (2d Cir. 2008) (summary order) (dismissing Section 1983 claims against union defendants); *Ahmad* v. *White Plains City Sch. Dist.*, No. 18 Civ. 3416 (KMK), 2019 WL 3202747, at *15 (S.D.N.Y. July 16, 2019) (same); *Dimps* v.

14

*Dist. Council 37, AFSCME*, No. 01 Civ. 1735 (DC), 2002 WL 206992, at *3
(S.D.N.Y. Feb. 8, 2002) (same); *Guttilla* v. *City of New York*, No. 14 Civ. 156
(JPO), 2015 WL 437405, at *5 (S.D.N.Y. Feb. 3, 2015) (same).  Accordingly,
Plaintiff's constitutional claims against UFT are dismissed.

### 2. Plaintiff Was Not Denied Due Process Under the Fourteenth Amendment

Despite advancing a multitude of claims in the SAC, the crux of Plaintiff's
grievances in this case relates to the process through which the probable cause
finding against her was made.  (*E.g.*, SAC ¶ 1).  Plaintiff argues that, per New
York Education Law § 3020-a(2)(a), a probable cause finding must be made by
vote of the PEP prior to a disciplinary hearing.  (Pl. Opp. 3).  Because the
probable cause finding here was instead made by a school superintendent,
Plaintiff contends that the hearing officer was divested of subject matter
jurisdiction and, by extension, that Plaintiff's termination was made without
due process of law.  (SAC ¶¶ 23, 42-44).  The Court finds that Plaintiff's
arguments are squarely foreclosed by Second Circuit precedent.

"The Due Process Clause does not protect against all deprivations of
constitutionally protected interests in life, liberty, or property, only against
deprivations without due process of law."  *Rivera-Powell* v. *N.Y.C. Bd. of
Elections*, 470 F.3d 458, 464 (2d Cir. 2006) (internal quotations omitted).  "In
evaluating what process satisfies the Due Process Clause, the Supreme Court
has distinguished between (a) claims based on established state procedures
and (b) claims based on random, unauthorized acts by state employees."
*DePrima* v. *City of N.Y. Dep't of Educ.*, No. 12 Civ. 3626 (MKB), 2014 WL

15

1155282, at *8 (E.D.N.Y. Mar. 20, 2014) (quoting *Rivera-Powell*, 470 F.3d at 465).

As to claims based on "established state procedures," a Section 1983 claim for a violation of procedural due process rights is assessed under a "familiar two-step inquiry": the court first determines "whether [Plaintiff] possessed a liberty or property interest" and, if it finds that she did, the court then determines "what process [she] was due before [she] could be deprived of that interest." *Valvo* v. *Dep't of Educ. of City of N.Y.*, No. 19 Civ. 8341 (JPO), 2021 WL 1063759, at *4 (S.D.N.Y. Mar. 18, 2021) (quoting *Ciambriello*, 292 F.3d at 313).  In addressing substantially similar claims, courts within the Second Circuit have roundly agreed that the pre-deprivation process afforded to teachers under New York Education Law § 3020-a is constitutionally adequate.  *See, e.g.*, *Green* v. *Dep't of Educ. of City of N.Y.*, 16 F.4th 1070, 1077 (2d Cir. 2021) ("The procedures outlined in New York Education Law § 3020-a exceed this [constitutional] standard by requiring 'notice and a full-blown adversarial hearing' prior to the termination of a tenured teacher." (quoting *Strong* v. *Bd. of Educ.*, 902 F.2d 208, 211 (2d Cir. 1990)); *Jacobs*, 271 F. App'x at 89 ("Nor do we identify any other argument in the complaint as to why § 3020-a, which provides a 'full-blown adversarial hearing,' would in this case be inadequate to satisfy the requirements of due process." (quoting *Strong*, 902 F.2d at 211)).

As to claims based on "random, unauthorized acts by state employees," "the state satisfies procedural due process requirements so long as it provides

16

meaningful post-deprivation remedy." *Rivera-Powell*, 470 F.3d at 465 (citing *Parratt* v. *Taylor*, 451 U.S. 527, 541 (1981); *Hudson* v. *Palmer*, 468 U.S. 517, 533 (1984)).  Article 75 proceedings constitute an adequate post-deprivation remedy to address any random or arbitrary deprivations of a protected property or liberty interest.  *See, e.g.*, *DePrima*, 2014 WL 1155282, at *8 (dismissing formerly-tenured teacher's due process claims premised on a biased hearing officer because "Plaintiff had an adequate post-deprivation remedy to address the [hearing officer's] bias in her Article 75 proceeding"); *Grillo* v. *N.Y.C. Transit Auth.*, 291 F.3d 231, 234 (2d Cir. 2002) ("This court has held on numerous occasions that where, as here, a party sues the state and its officials and employees for the arbitrary and random deprivation of a property or liberty interest, an Article 78 proceeding [an analogous proceeding] is a perfectly adequate postdeprivation remedy." (internal quotations omitted)); *Myers* v. *Camden Cent. Sch. Dist.*, No. 10 Civ. 1167 (GTS), 2012 WL 2921574, at *11 (N.D.N.Y. July 17, 2012) ("[E]ven if there has been a violation of New York Education Law § 3020-a, there has been no violation of the Fourteenth Amendment's Due Process Clause if sufficient post-deprivation process is given within a reasonable time period.").

Whether styled as a claim based on established procedures or unauthorized acts, Plaintiff's due process claim is unavailing.  Within the framework of "established state procedures," Plaintiff was afforded a standard Section 3020-a hearing that comported with all applicable statutory requirements.  The SAC itself reveals that Plaintiff received adequate notice of

the Section 3020-a specifications against her that set forth the reasons for her discipline.  (SAC ¶ 19).  These specifications were delivered to Plaintiff over four months prior to her hearing.  (*Id.*).  Plaintiff's hearing then took place over the course of six days.  (*Id.* at ¶ 28).  Thereafter, the hearing officer rendered a decision six weeks later based on the record developed at the hearing, finding in favor of Plaintiff as to some specifications and against her as to others.  (*Id.* at ¶ 29).  The Second Circuit has held that these procedures not only satisfy, but exceed, what is required by the Due Process clause.  *See, e.g.*, *Green*, 16 F.4th at 1077.

Plaintiff's theory that New York's statutory scheme of delegating certain powers to the Chancellor and other school officials offends due process finds no support in the law.  Quite to the contrary, New York statutory law expressly authorizes the manner in which the probable cause determination was made against Plaintiff here.[5]  Under New York Education Law § 2590-h(38), the Chancellor may "exercise all of the duties and responsibilities of the employing board as set forth in section three thousand twenty-a of this chapter with respect to any member of the teaching or supervisory staff of schools under the jurisdiction of the community district education councils."  N.Y. Educ. Law § 2590-h(38).  Section 2590-h(19), in turn, provides that the Chancellor may

---

[5]     Similarly, Plaintiff's suggestion that the implementation of a permanent arbitration panel is somehow constitutionally suspect (SAC ¶ 24) is contradicted by Section 3020 itself, which allows for the use of "alternate disciplinary procedures contained in a collective bargaining agreement."  N.Y. Educ. Law § 3020.  Irrespective of the statutory grounding for the permanent arbitration panel, Plaintiff's due process claim on this basis fails for the same reason that her other due process arguments fail.

"[d]elegate any of his or her powers and duties to such subordinate officers or employees as he or she deems appropriate and to modify or rescind any power and duty so delegated." *Id.* § 2590-h(19).  Finally, Section 2590-f(1)(b) grants delegatory authority to superintendents, allowing them "to delegate any of her or his powers and duties to such subordinate officers or employees of her or his community district as she or he deems appropriate, at his or her sole discretion, and to modify or rescind any power and duty so delegated." *Id.* § 2590-f(1)(b).  These statutory provisions, taken together, authorize the Chancellor to make a probable cause determination, or to delegate that responsibility to "subordinate officers," some of whom may similarly delegate to others.

Federal and state courts have consistently rejected Plaintiff's due process claim.  As the Second Circuit recently explained, "[a]lthough [plaintiff] argues that the DOE deviated from the § 3020-a procedures because a school principal made the initial probable cause determination, such a deviation does not amount to a federal constitutional due process violation; it is undisputed that [plaintiff] received notice of the charges." *Green*, 16 F.4th at 1077.  What is more, the primary basis for a variety of Plaintiff's claims in this case — *Cardinale* — was recently overturned by the Appellate Division Second Department:

> However, contrary to the legal conclusion asserted in the petition, the absence of a vote on probable cause by the "employing board" (Education Law § 3020-a[2]), did not deprive the hearing officer of the jurisdictional authority to hear and determine the underlying disciplinary charges. Rather, as the hearing officer

> determined, the Chancellor was vested with the authority "[t]o exercise all of the duties and responsibilities of the employing board as set forth in [Education Law § 3020-a]", and with the authority to "delegate the exercise of all such duties and responsibilities" (Education Law § 2590-h[38]).

*Cardinale* v. *N.Y.C. Dep't of Educ.*, 168 N.Y.S.3d 90, 94-95 (2d Dep't 2022) (internal citations omitted).[6]

If, on the other hand, this Court were to consider the City Defendants' actions to be "random and unauthorized" because of this alleged probable cause deficiency, Plaintiff's claim would still fall short because the Article 75 hearing that she received cured any issues and satisfied due process. Plaintiff took advantage of the ability to challenge the hearing officer's decision by seeking vacatur in the New York Supreme Court. (Rosenfeld Decl., Ex. A; SAC ¶¶ 32-33). The court upheld the hearing officer's decision, finding that there was "ample evidence in the record to support the arbitrator's determination." (Rosenfeld Decl., Ex. A at 4). Against this backdrop, this Court's task is not to serve as a further level of appellate review of the hearing officer *or* the New York Supreme Court. Instead, its job is to evaluate whether Plaintiff was afforded adequate process under the Due Process Clause. As the foregoing discussion makes clear, Plaintiff was afforded sufficient process both pre- and post-deprivation, and therefore her Section 1983 claim under the Fourteenth Amendment must be dismissed.

---

[6]     The Appellate Division rendered its decision after the close of briefing in this case.

### 3.     Plaintiff's Stigma-Plus Due Process Claim Fails

Plaintiff brings a second due process claim under the banner of "stigma plus." (SAC ¶¶ 70-76 (seventh cause of action)).  In essence, Plaintiff argues that, separate and apart from the procedural defects inherent in the probable cause determination, Defendants violated her due process rights by placing her on the "Problem Code" or "Ineligible Inquiry List" following her termination.  (*Id.* at ¶ 74).  Plaintiff alleges that as a result of Defendants' actions, she cannot obtain a job with DOE and "is stigmatized and unable to work in NYC public schools." (*Id.* at ¶ 75).  Beyond this, Plaintiff avers that the "flagging of her fingerprints" was published to "press and the FBI or others[.]"  (*Id.* at ¶¶ 72-73).  The City Defendants offer three retorts: (i) the allegations regarding dissemination of the problem code list are entirely conclusory; (ii) the records accurately reflect Plaintiff's disciplinary history, and thus are not false and stigmatizing; and (iii) Plaintiff's argument concerning an internal DOE record is expressly precluded by Second Circuit precedent.  (DOE Br. 12).  The Court sets aside these disagreements between the parties, and dismisses Plaintiff's stigma-plus claim because she was afforded adequate process.

Of note, a stigma-plus claim is not different in kind than other procedural due process claims.  Indeed, the Second Circuit has recognized that "stigma plus is a species within the phylum of procedural due process claims … it is not enough that the plaintiff has demonstrated the deprivation of her liberty interest; in order to bring a successful stigma-plus claim, the

plaintiff also must demonstrate that her liberty was deprived without due process of law."  *Segal* v. *City of New York*, 459 F.3d 207, 213 (2d Cir. 2006).

Because a stigma-plus claim falls under the umbrella of other procedural due process claims, it may be defeated by a showing that a plaintiff was afforded constitutionally-adequate process.  *See, e.g.*, *Barrer-Cohen* v. *Greenburgh Cent. Sch. Dist.*, No. 18 Civ. 1847 (NSR), 2019 WL 3456679, at *9 (S.D.N.Y. July 30, 2019) ("Plaintiff's stigma-plus claim is defeated by the availability of an adequate remedy, an Article 78 proceeding, after her resignation."); *see also Barzilay* v. *City of New York*, No. 20 Civ. 4452 (LJL), 2022 WL 2657169, at *38 (S.D.N.Y. July 8, 2022) ("[I]n order to bring a successful stigma-plus claim, the plaintiff also must demonstrate that her liberty was deprived without due process of law.  Stated differently, the availability of adequate process defeats a stigma-plus claim." (quoting *Segal*, 459 F.3d at 212)); *Dolcine* v. *Hanson*, No. 17 Civ. 4835 (VEC), 2021 WL 949748, at *9 (S.D.N.Y. Mar. 12, 2021) (dismissing stigma-plus claim because "[t]here can be no dispute that Plaintiff received adequate pre-deprivation process, having received both notice and an opportunity to respond").

Here, Plaintiff's stigma-plus claim fails for the same reasons discussed in connection with her separate procedural due process claim.  As noted, Plaintiff was afforded meaningful pre- and post-deprivation process.  Even if Plaintiff had alleged the necessary elements of a stigma-plus claim — which Defendants

vociferously dispute[7] — the fact that Plaintiff's Section 3020-a and Article 75 hearings constituted constitutionally adequate process precludes her from bringing a stigma-plus claim.  Accordingly, the Court dismisses this claim.

### 4. Plaintiff Fails to State a Claim for an Equal Protection Violation

Plaintiff's final constitutional claim alleges that Defendants violated the Equal Protection Clause.  (SAC ¶¶ 50-55 (third cause of action)).  In essence, Plaintiff's argument is that New York City teachers are treated differently than teachers elsewhere in the state by virtue of the statutory disciplinary scheme that delegates certain authorities to the Chancellor and other school officials. (*Id.* at ¶ 51 ("By setting up a charging process that secretly denies the procedures cited in Education Law 3020-a(2)(a) only in New York City and not elsewhere in New York State, Plaintiff has been harmed by the arbitrary and irrational actions of Defendants[.]"); Pl. Opp. 14 ("This distinction creates a suspect classification (and disparate treatment), denying New York City teachers

---

[7]    Plaintiff and Defendants contest a host of subsidiary issues associated with stigma-plus claims.  One such issue is the requirement that the stigmatizing statement be disseminated publicly, such that it would deprive a person of a protected property interest in his or her reputation.  (*See, e.g.*, DOE Br. 11-13; Pl. Opp. 15).  The Court briefly notes that courts within this Circuit have conclusively rejected Plaintiff's argument that "placement of [Plaintiff's] name in the DOE's ineligible list" (Pl. Opp. 18) or "Problem Code" list (SAC ¶ 74) is sufficient to satisfy the public dissemination requirement.  *See, e.g.*, *Valvo* v. *Dep't of Educ. of City of N.Y.*, No. 19 Civ. 8341 (JPO), 2021 WL 1063759, at *4 (S.D.N.Y. Mar. 18, 2021); *Arroyo* v. *Dep't of Educ. of City of N.Y.*, No. 19 Civ. 7416 (ER), 2020 WL 4570380, at *14 (S.D.N.Y. Aug. 6, 2020); *Green* v. *Dep't of Educ. of City of N.Y.*, No. 18 Civ. 10817 (GWG), 2019 WL 3432306, at *11 (S.D.N.Y. July 31, 2019).  And while Plaintiff also alleges that Defendants published "the flag to press and the FBI or others" (SAC ¶ 73), the Court need not address this allegation given its finding that the process afforded to Plaintiff was constitutionally adequate.

equal protection of the law, as guaranteed by Article 1, Section 11 of the New York State Constitution.")).[8]

Plaintiff's claim is squarely foreclosed by Second Circuit caselaw.[9] Differences in treatment between New York City and New York State teachers do not rise to the level of a suspect classification, and thus this Court applies only rational-basis review to the state's scheme. Just as myriad other courts within this Circuit have found, aspects of the Education Law that treat teachers in New York City differently from their counterparts in other sections of the state easily pass rational-basis review. *See, e.g.*, *Adams* v. *N.Y. State Educ. Dep't*, 752 F. Supp. 2d 420, 460 (S.D.N.Y. 2010) ("Using the rational basis test, [plaintiffs] cannot prevail because the fourth amended complaint does not negate every conceivable basis which might support" New York's statutory scheme. (internal quotations omitted)), *aff'd sub nom. Ebewo* v. *Fairman*, 460 F. App'x 67 (2d Cir. 2012) (summary order); *see also Green*, 2019 WL 3432306, at 10 ("[Plaintiff] has not negative[d] every conceivable basis that could justify the distinction between teachers employed in New York City and those employed elsewhere in

---

[8]     In her opposition brief, Plaintiff references for the first time a provision of the New York State Constitution. (Pl. Opp. 14). Because Plaintiff makes only a cursory reference to the New York State Constitution in the SAC (SAC ¶ 2 ("Plaintiff brings this action under, 42 U.S.C. § 1983, 29 U.S.C. §185, Stigma Plus, First and Fourteenth Amendment of the United States Constitution and those parts of the New York State Constitution which similarly apply with like language[.]")), the Court addresses Plaintiff's allegations only in the context of federal constitutional law.

[9]     Plaintiff does not appear to raise a "class of one" equal protection claim, and instead argues that New York has used a suspect classification in differentiating between New York City teachers and New York State teachers. Even if Plaintiff made a class of one argument, it would fail as a matter of law. *See Chick* v. *Cnty. of Suffolk*, 546 F. App'x 58, 60 (2d Cir. 2013) (summary order) ("[A] 'class of one' does not exist in the public employment context." (quoting *Engquist* v. *Oregon Dep't of Agr.*, 553 U.S. 591, 607 (2008))).

the state." (internal quotations omitted)).  Accordingly, the Court dismisses

Plaintiff's equal protection claim.

## D.     Plaintiff's State-Law Claims Fail

In addition to her constitutional claims, Plaintiff brings a variety of state-

law claims against Defendants.  (SAC ¶¶ 46-49, 56-61, 62-65, 66-69).  These

claims include: (i) intentional infliction of emotional distress ("IIED"); (ii) breach

of contract; (iii) "deceit"; and (iv) fraudulent inducement.  (*Id.*).  However

labelled in the SAC, Plaintiff's claims are functionally a repackaging of her

constitutional claims.  For instance, Plaintiff clarifies in her opposition brief

that her fraud claims are premised on "specific accounts of the false material

representations presented by the Defendants as truth, as well as Defendants'

misconduct in manipulating the information required by Education Law 3020-

a to give an arbitrator subject matter jurisdiction to hear a case."  (Pl. Opp. 25).

The Court has already dismissed Plaintiff's constitutional claims because they

are based on a misreading of state and federal law.  As discussed herein,

Plaintiff's repackaging of these arguments as state-law claims does not render

them any more viable.

### 1.     Plaintiff Fails to State a Claim for Intentional Infliction of Emotional Distress[10]

Plaintiff alleges in her second cause of action that Defendants are liable

for IIED.  (SAC ¶¶ 46-49).  The SAC reads: "the egregious conduct of

---

[10]    Both the City Defendants and UFT argue that Plaintiff's IIED claim is foreclosed for the
simple reason that they may not be sued for such claim.  (UFT Br. 20-21; DOE Br. 8-9).
They similarly argue that statute of limitations has run as to various state-law claims,
including IIED. (*See, e.g.*, UFT Br. 21).  On this latter point, Plaintiff responds that she
has alleged evidence of a continuing wrong, such that the statute of limitations has not

defendants was deliberate, malicious, willful and made in bad faith in denying plaintiff the protections guaranteed by tenure law, her employment contract, and the UFT Collective Bargaining Agreement." (*Id.* at ¶ 47). In her opposition, Plaintiff's only defense to Defendants' arguments for dismissal is her assertion that Plaintiff "has lost her career and livelihood for an invalid set of allegations for which she was found guilty without a finding of probable cause. She was a terrific teacher yet has been left without a salary to support her and her family for no lawful reason." (Pl. Opp. 17). Because these allegations are conclusory and do not state a claim in any event, the Court dismisses the count.

"Under New York law, a claim for intentional infliction of emotional distress must satisfy an 'exceedingly high legal standard.'" *DiRuzza* v. *Lanza*, 685 F. App'x 34, 36 (2d Cir. 2017) (summary order) (quoting *Chanko* v. *Am. Broad. Cos. Inc.*, 27 N.Y.3d 46, 57 (2016)). "[A] party alleging an intentional infliction claim must plead and prove conduct 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, [so as] to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.* at 37 (quoting *Chanko*, 27 N.Y.3d at 56). To state an IIED claim sufficient to overcome a motion to dismiss, "a plaintiff must plausibly allege '[i] extreme and outrageous conduct, [ii] intent to cause severe emotional distress, [iii] a causal

---

run, and contends in the alternative that the limitations period should be equitably tolled because the "causes of action have been fraudulently concealed[.]" (Pl. Opp. 22-23 ("Defendants knew that there was no Executive Session and vote on probable cause, and also knew that a waiver was needed to officially go around this mandatory requirement in Education Law. They concealed any waiver, agreement, memo, or other, that could support the fraudulent procedure, due to the unravelling of the teacher tenure hearings in New York City.")). The Court does not engage with these disagreements because Plaintiff's claims fail for a variety of other reasons.

connection between the conduct and the injury, and [iv] severe emotional distress.'" *Levin* v. *Am. Document Servs., LLC*, 828 F. App'x 788, 792 (2d Cir. 2020) (summary order) (quoting *Bender* v. *City of New York*, 78 F.3d 787, 790 (2d Cir. 1996)).

Plaintiff has not pleaded facts sufficient to meet this high burden. Although Plaintiff — like any former employee — may be emotionally and financially impacted by the termination of her employment, Defendants' actions do not constitute IIED. Plaintiff has not even attempted to plead facts going to Defendants' intent or to her own severe emotional distress. And Plaintiff's allegations that Defendants acted "egregious[ly]" are conclusory and belied by other facts in the SAC. (SAC ¶ 47). Indeed, Plaintiff devotes the bulk of the SAC and her opposition brief to discussing arguments about New York statutory law, which arguments, as discussed above, are misplaced. That the City Defendants acted pursuant to valid statutory provisions in order to discipline Plaintiff does not make their conduct "outrageous," nor does the fact that Plaintiff disputes the legality of these procedures. UFT is correct that refusing "to raise an unmeritorious defense during the course of [Plaintiff's] disciplinary proceeding" similarly does not constitute extreme and outrageous behavior. (UFT Br. 20). In short, because Plaintiff has not pleaded any facts going to several of the elements of an IIED claim, and because the only allegations Plaintiff has made are entirely conclusory, this claim is dismissed.

### 2.    Plaintiff Fails to State a Claim for Breach of the CBA

Plaintiff next turns to the CBA between UFT and DOE.  Her fourth cause of action — labeled "Fraud; 29 U.S.C. §185; Breach of Contract" — essentially states that Defendants breached that CBA, thereby injuring Plaintiff.  (SAC ¶ 60).[11]  Plaintiff's contention appears to be that Defendants breached the CBA by negligently carrying out the investigation and sanctioning Plaintiff's termination.  (*Id.*).  Defendants contend that Plaintiff's claim is deficient because Plaintiff has failed to plead the elements of a breach of contract

---

[11]    Plaintiff cites 29 U.S.C. § 185, which gives district courts jurisdiction over actions by or against labor organizations under the Labor Management Relations Act (the "LMRA").  *See* 29 U.S.C. § 185(c).  But the LMRA does not apply to public employees, and Plaintiff — a former public-school teacher — undeniably was one.  *Id.* § 152(2) ("The term 'employer' … shall not include the United States or any wholly owned Government corporation, or any Federal Reserve Bank, or any State or political subdivision thereof[.]").  "[T]he Second Circuit has squarely held that 'the language of the LMRA makes plain [that] public employees are not covered by that statute.'"  *Green* v. *Dep't of Educ. of City of N.Y.*, No. 18 Civ. 10817 (AT) (GWG), 2020 WL 6530897, at *7 (S.D.N.Y. June 17, 2020) (quoting *Ford* v. *D.C. 37 Union Local 1549*, 579 F.3d 187, 188 (2d Cir. 2009)), *report and recommendation adopted*, No. 18 Civ. 10817 (AT) (GWG), 2020 WL 5814187 (S.D.N.Y. Sept. 30, 2020), *aff'd*, 16 F.4th 1070 (2d Cir. 2021).  Accordingly, this Court would lack subject matter jurisdiction over any claim Plaintiff might bring under the LMRA.  *Malcolm* v. *Ass'n of Supervisors & Adm'r s of Rochester*, 831 F. App'x 1, 3 (2d Cir. 2020) (summary order) ("[T]here is no federal subject matter jurisdiction over a fair-representation claim under the Labor Management Relations Act against a public school district or the union representing its employees." (citing *Ford*, 579 F.3d at 188)).  Because other federal courts have considered breach of a collective bargaining agreement and fair representation claims under New York law while dismissing for lack of subject matter jurisdiction claims brought under federal law, *see, e.g.*, *Robert D'Onofrio* v. *City of New York*, No. 07 Civ. 0731 (CBA) (LB), 2010 WL 4673879, at *10 (E.D.N.Y. Sept. 14, 2010), *report and recommendation adopted sub nom. D'Onofrio* v. *City of New York*, No. 07 Civ. 0731 (CBA) (LB), 2010 WL 4673608 (E.D.N.Y. Nov. 5, 2010), and to the extent that the parties all appear to consider these claims under state law, the Court will consider the claims.  *See Malcolm*, 831 F. App'x at 3-4 (affirming dismissal of LMRA claim for lack of subject matter jurisdiction, and noting that "[e]ven if this claim were construed as a state-law claim for breach of the duty of fair representation" it would still fail for other reasons).

adequately, and because an individual may not ordinarily enforce the terms of a CBA between a union and employer.  (UFT Br. 21-22; DOE Br. 9).

UFT in particular devotes significant briefing to this issue, and suggests that Plaintiff's breach of fair representation claim against the Union is masquerading as a breach of contract claim.  (UFT Br. 6-9; UFT Reply 1-3).  UFT also argues that any such claim is time-barred.  (UFT Br. 13-15).  In point of fact, Plaintiff does not explicitly plead that UFT breached the duty of fair representation.  Instead, she implies as much in the SAC and in her opposition papers.  (*See* SAC ¶ 27 (discussing the Union's failure to cite the *Cardinale* decision and recalling that "if [Plaintiff] continued to ask for this case to be argued, [the Union] would withdraw from representing her"); Pl. Opp. 5 (faulting the Union for not "stop[ping] or block[ing] the irrational charges from going to a full hearing")).  Because the Court finds that Plaintiff has not stated a claim for a breach of the duty of fair representation — a prerequisite for an action on the CBA — and because Plaintiff has not adequately pleaded a breach of contract claim in any event, the Court dismisses this claim.

"Generally, New York courts have held that a public employee has no right to sue his employer under a collective bargaining agreement, as his remedy for breach thereof is 'limited to the grievance procedure set forth therein.'"  *Klika* v. *Tuckahoe Police Org.*, *Inc.*, No. 18 Civ. 5031 (NSR), 2020 WL 2097606, at *6 (S.D.N.Y. May 1, 2020) (quoting *Parisi* v. *N.Y.C. Hous. Auth.*, 703 N.Y.S.2d 446, 446 (1st Dep't 2000)); *see also McGrath* v. *Arroyo*, No. 17 Civ. 1461 (NGG) (RER), 2019 WL 3754459, at *17 (E.D.N.Y. Aug. 8, 2019) ("[A]n

individual plaintiff usually does not have standing to sue on a collective

bargaining agreement; rather, [s]he can enforce a collective bargaining

agreement only through the union." (citing *Hunt* v. *Klein*, No. 10 Civ. 2778

(GBD), 2011 WL 651876, at *2 (S.D.N.Y. Feb. 10, 2011), *aff'd*, 476 F. App'x 889

(2d Cir. 2012) (summary order)); *Sussman* v. *N.Y.C. Health & Hosps. Corp.*,

No. 94 Civ. 8461 (DBS), 1997 WL 334964, at *20 (S.D.N.Y. June 16, 1997)

(same). A narrow exception to this rule exists where a public employee

"show[s] that his representative union breached its duty to represent him fairly,

or that the collective bargaining agreement otherwise permits a direct action

against the employer." *Klika*, 2020 WL 2097606, at *6 (citing *Parisi*, 703

N.Y.S.2d at 446; *Buff* v. *Village of Manlius*, 983 N.Y.S.2d 145, 146-47 (4th Dep't

2014); *Lundgren* v. *Kaufman Astoria Studios, Inc.*, 690 N.Y.S.2d 609, 610 (2d

Dep't 1999); *Clark* v. *County of Cayuga*, 623 N.Y.S.2d 57, 57-58 (4th Dep't

1995)).

"The standard for establishing a breach of the duty of fair representation

is generally the same whether [the] plaintiff is alleging such a breach under

federal law or New York state law." *Gordon* v. *Health & Hospitals Corp.*, No. 06

Civ. 1517 (RJD) (LB), 2007 WL 2021853, at *2 (E.D.N.Y. July 12, 2007). "To

establish a breach of the duty of fair representation, the plaintiff must show

that the union's actions were arbitrary, discriminatory, or in bad faith, and

that the union's conduct seriously undermined the arbitral process." *Bacchus*

v. *N.Y.C. Dep't of Educ.*, 137 F. Supp. 3d 214, 249 (E.D.N.Y. 2015) (citing

*Spellacy* v. *Airline Pilots Ass'n-Int'l*, 156 F.3d 120, 126 (2d Cir. 1998); *Beachum*

v. *AWISCO New York*, 785 F. Supp. 2d 84, 101 (S.D.N.Y. 2011), *aff'd sub nom.*

*Beachum* v. *AWISCO N.Y. Corp.*, 459 F. App'x 58 (2d Cir. 2012) (summary

order); *Barr* v. *United Parcel Serv.*, 868 F.2d 36, 43 (2d Cir. 1989); *Grassel* v.

*Pub. Emp't Relations Bd.*, 753 N.Y.S.2d 522, 523 (2d Dep't 2003)). "A union

acts arbitrarily only if, 'in light of the factual and legal landscape at the time of

the union's actions, the union's behavior is so far outside a wide range of

reasonableness as to be irrational.'" *Cano* v. *SEIU Loc. 32BJ*, No. 19 Civ. 8810

(PAE) (KHP), 2021 WL 4480274, at *12 (S.D.N.Y. Sept. 30, 2021) (quoting

*Airline Pilots Ass'n Int'l* v. *O'Neill*, 499 U.S. 65, 67 (1991)). And a union acts

discriminatorily only where "'substantial evidence' indicates that it engaged in

discrimination that was 'intentional, severe, and unrelated to legitimate union

objectives.'" *Vaughn* v. *Airline Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir.

2010) (quoting *Amalgamated Ass'n of St., Elec., Ry. & Motor Coach Emps. of Am.*

v. *Lockridge*, 403 U.S. 274, 301 (1971)). Finally, a union acts in bad faith when

it takes "fraudulent, deceitful, or dishonest action." *White* v. *White Rose Food,*

*a Div. of DiGiorgio Corp.*, 237 F.3d 174, 179 (2d Cir. 2001) (internal quotations

omitted).

     As to the substance of a breach of contract claim, "[u]nder New York law,

the elements of a claim for breach of contract are '[i] the existence of an

agreement, [ii] adequate performance of the contract by the plaintiff, [iii] breach

of contract by the defendant, and [iv] damages.'" *Hewes* v. *Democratic Nat'l*

*Comm.*, No. 19 Civ. 7784 (KPF), 2021 WL 706619, at *6 (S.D.N.Y. Feb. 22,

2021) (quoting *Abraham* v. *Leigh*, 471 F. Supp. 3d 540, 556 (S.D.N.Y. 2020),

*reconsideration denied*, No. 17 Civ. 5429 (KPF), 2020 WL 5095655 (S.D.N.Y.

Aug. 28, 2020); *Harsco Corp.* v. *Segui*, 91 F.3d 337, 348 (2d Cir. 1996)).  "'[A]n

essential requirement for a breach of contract claim' [is] that Plaintiff identify

the specific provisions of a contract that it alleges the defendant has violated."

*(RC) 2 Pharma Connect, LLC* v. *Mission Pharmacal Co.*, No. 21 Civ. 11096 (LJL),

2022 WL 2441046, at *7 (S.D.N.Y. July 5, 2022) (quoting *Gallo* v. *Inter-Con*

*Security Systems Inc.*, No. 20 Civ. 4879 (KPF), 2021 WL 3913539, at *9

(S.D.N.Y. Sept. 1, 2021) (internal quotation marks omitted); *Orange County*

*Choppers, Inc.* v. *Olaes Enters., Inc.*, 497 F. Supp. 2d 541, 554 (S.D.N.Y. 2007)).

As a threshold matter, Plaintiff lacks standing to bring a breach of

contract claim against Defendants.  Plaintiff has not adequately alleged that

UFT breached its duty of fair representation, and thus she cannot maintain a

claim in her individual capacity based on the CBA.[12]  *First*, Plaintiff does not

allege — in conclusory fashion or otherwise — that UFT breached its duty of

fair representation.  Indeed, there is no claim for breach of the duty of fair

representation to be found anywhere in the SAC, nor does Plaintiff

---

[12]     UFT also points out that a claim for breach of the duty of fair representation would be
time-barred.  The statute of limitations for such a claim would be four months from the
date the employee knew or should have known that the breach occurred, or within four
months of the employee suffering actual harm, whichever is later.  N.Y. C.P.L.R.
§ 217(2)(a).  Plaintiff attempts to evade the statute of limitations on this and other
claims by again arguing that her causes of action have been "fraudulently concealed" by
Defendants.  (Pl. Opp. 22).  UFT notes that this cannot be the case for a claim premised
on UFT's failure to pursue certain legal arguments or to more forcefully contest the
probable cause finding in Plaintiff's case, because Plaintiff admits that UFT sent written
notice to her in April 2018.  (UFT Reply 3-4).  Given that Plaintiff has not actually
alleged a standalone claim for breach of the duty of fair representation, and because the
Court only considers the claim in the context of Plaintiff's broader breach of contract
claim, the Court will not resolve this dispute.

acknowledge that such a breach is a prerequisite to her action on the CBA. *Second*, Plaintiff advances minimal allegations about her union representation, which allegations distill to her dispute with counsel regarding the *Cardinale* decision and the consequent threatened withdrawal. (SAC ¶ 27). Beyond that, Plaintiff offers only nebulous references to her lawyer's failure to prevent the hearing that resulted in her termination. (Pl. Opp. 5). These allegations, one of which is entirely conclusory, do not show that UFT's actions were arbitrary, discriminatory, or in bad faith.

*Second*, Plaintiff cannot base a claim for a breach of the duty of fair representation on the fact that she would have argued her case differently. Plaintiff's real objection is that her union-provided lawyer should have more forcefully cited to the *Cardinale* decision. Her attorney evidently disagreed as to this strategy — a prescient decision, given that *Cardinale* was later overturned — and stated that he would no longer be able to represent her if she continued insisting on it. (SAC ¶ 20). These allegations do not state a claim for breach of the duty of fair representation, as "[n]either a union's decision not to pursue an employee's grievance to every level of the applicable procedure, nor the employee's dissatisfaction with the manner in which the union conducted the representation, constitutes sufficient grounds warranting a finding of a breach of the duty of fair representation." *Saidin* v. *N.Y.C. Dep't of Educ.*, 498 F. Supp. 2d 683, 689 (S.D.N.Y. 2007) (citing *Ponticello* v. *County of Suffolk*, 640 N.Y.S.2d 169 (2d Dep't 1996)). This would be true even if Plaintiff had been correct as to the best legal strategy. *See, e.g.*, *Barr*, 868 F.2d

at 43 ("Tactical errors are insufficient to show a breach of the duty of fair representation; even negligence on the union's part does not give rise to a breach."); *Cruz* v. *Loc. Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1153-54 (2d Cir. 1994) ("[T]he duty of fair representation is not breached where the union fails to process a meritless grievance, engages in mere negligent conduct, or fails to process a grievance due to error in evaluating the merits of the grievance."). Again, plausibly alleging that UFT acted arbitrarily, discriminatorily, or in bad faith requires substantially more than taking issue with how an attorney made his client's case. This is especially true given that Plaintiff's claims as to UFT's allegedly deficient performance rest on misapprehensions of New York and federal law.

Even if the Court were to look past this threshold obstacle, Plaintiff's claim would still fail because she has not pleaded the necessary elements of a breach of contract.[13]  Nowhere in the SAC does Plaintiff point out a specific

---

[13]    Plaintiff devotes the bulk of her opposition on this point to arguing with UFT's citation to *Martin* v. *Curran,* 303 N.Y. 276 (1951).  (Pl. Opp. 7-8).  In Plaintiff's view, UFT's reliance on *Martin* is misplaced because the case does not foreclose a breach of contract claim against a union for wrongful expulsion of one of its members.  (Pl. Opp. 7-8).  But UFT only cites to *Martin* in the context of arguing for dismissal of Plaintiff's IIED and fraud claims, not the breach of contract claim.  (UFT Br. 20, 22).  And this Court need not wade into the nuances of *Martin* and of *Madden* v. *Atkins*, 4 N.Y.2d 283 (1958), because, as UFT points out, "[t]his case does not involve the wrongful expulsion of a member from a union after a vote of the membership."  (UFT Reply 8; *see also* Pl. Opp. 7-8 (acknowledging that *Madden* concerns "suits for breach of contract against an unincorporated union for wrongful expulsion of its members")).  *See also Moleon* v. *Alston*, No. 21 Civ. 1398 (PAE), 2021 WL 5772439, at *11 (S.D.N.Y. Dec. 3, 2021) ("*Madden*'s exception to *Martin* is not so broad.  It merely applies where a union member brings a civil damages action against his union for wrongfully expelling him." (citing *R.M. Perlman Inc.* v. *N.Y. Coat, Suit, Dresses, Rainwear & Allied Workers' Union*, 789 F. Supp. 127, 132 (S.D.N.Y. 1992); *Morrissey* v. *Nat'l Mar. Union*, 544 F.2d 19, 33 (2d Cir. 1976))).  Plaintiff pleads nothing to suggest that her breach of contract claim is a wrongful expulsion claim against the Union.  Further, this dispute does not bear on

provision of the CBA that Defendants breached.  Indeed, Plaintiff's only reference to a provision of the CBA is to Article 21G(2), which allows for the implementation of a permanent arbitration panel.  (SAC ¶¶ 24-25).  Plaintiff's objection is not that Defendants breached this provision.  To the contrary, she suggests that Defendants' *adherence* to this provision is a constitutional violation.  (*Id.*).  But Plaintiff cannot maintain a breach of contract claim based on conceded compliance with the contract.  Accordingly, the Court dismisses Plaintiff's breach of contract claim against all Defendants.

### 3. Plaintiff Fails to State a Claim for Fraud or Fraudulent Inducement

Plaintiff's fifth and sixth causes of action are for fraud and fraudulent inducement, respectively.  (SAC ¶¶ 62-65 (fraud), 66-69 (fraudulent inducement)).[14]  In the SAC itself, Plaintiff does not connect the elements of these claims to Defendants' purported conduct; instead, she simply lists the elements of these claims.  (*Id.*).  In her opposition brief, Plaintiff's only substantiation for her fraud claims is as follows:

> Plaintiff's Second Amended Complaint and her arguments herein are wrought with specific accounts of the false material representations presented by the Defendants as truth, as well as Defendants' misconduct in manipulating the information required by Education Law 3020-a to give an arbitrator subject matter jurisdiction to hear a case.

---

whether Plaintiff has adequately pleaded the elements of a claim based on breach of the collective bargaining agreement.

[14]   Plaintiff's fifth cause of action is styled as "Deceit[.]"  (SAC ¶¶ 62-65).  Plaintiff does not, however, use the term "deceit" once in her opposition, and does not suggest that this is a unique cause of action.  Instead, she argues in her opposition brief that she has sufficiently stated a cause of action for fraud.  (Pl. Opp. 24-25).  Because the parties evidently agree that only fraud is at issue (*see, e.g.*, DOE Br. 9-10 (discussing fraud and deceit interchangeably)), the Court construes the SAC to assert a claim of fraud.

> Further, Defendants' collective actions constitute acts of
> deception and manipulation, by concealment, and
> commission, in generating, and assisting in generating
> repeated false and misleading statements and information
> in violation of Plaintiff's due process and civil rights.

(Pl. Opp. 25).  The City Defendants contend that Plaintiff has failed to plead her fraud claims with the specificity required by Rule 9(b) of the Federal Rules of Civil Procedure (DOE Br. 10-11), while UFT argues that Plaintiff has not alleged facts sufficient to satisfy the elements of a fraud claim (UFT Br. 22).[15]

"'Under New York law, to state a claim for fraud a plaintiff must demonstrate: [i] a misrepresentation or omission of material fact; [ii] which the defendant knew to be false; [iii] which the defendant made with the intention of inducing reliance; [iv] upon which the plaintiff reasonably relied; and [v] which caused injury to the plaintiff.'" *Pipala* v. *JP Morgan Chase Bank NA*, No. 16 Civ. 3723 (VB), 2016 WL 7378979, at *2 (S.D.N.Y. Dec. 20, 2016) (quoting *Wynn* v. *AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001)).  "A claim for fraudulent inducement must satisfy the same elements."  *Comolli* v. *Huntington Learning Centers, Inc.*, 117 F. Supp. 3d 343, 349 (S.D.N.Y. 2015); *see also Ipcon Collections LLC* v. *Costco Wholesale Corp.,* 698 F.3d 58, 62 (2d Cir. 2012)).

Beyond pleading facts demonstrating the above elements, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b); *see also United States ex*

---

[15]  Here again, UFT returns to *Martin* v. *Curran,* and argues that Plaintiff cannot maintain a fraud claim against the Union "because the Complaint does not allege that every member of the union ratified the alleged tortious conduct."  (UFT Br. 22).  Because Plaintiff's fraud claims fail for the independent reasons discussed in the remainder of this section, the Court does not address this point further.

*rel. Ladas* v. *Exelis, Inc.*, 824 F.3d 16, 25 (2d Cir. 2016).  As the Second Circuit has clarified, "Rule 9(b) places two further burdens [beyond Rule 8] on fraud plaintiffs — the first goes to the pleading of the circumstances of the fraud, the second to the pleading of the defendant's mental state." *Loreley Fin. (Jersey) No. 3 Ltd.* v. *Wells Fargo Sec., LLC*, 797 F.3d 160, 171 (2d Cir. 2015).

As to this first burden, a plaintiff must "[i] detail the statements (or omissions) that the plaintiff contends are fraudulent, [ii] identify the speaker, [iii] state where and when the statements (or omissions) were made, and [iv] explain why the statements (or omissions) are fraudulent." *Loreley*, 797 F.3d at 171 (quoting *Eternity Glob. Master Fund Ltd.* v. *Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004) (internal quotation marks omitted)).  "In other words, Rule 9(b) requires that a plaintiff set forth the who, what, when, where and how of the alleged fraud." *United States ex. rel. Polansky* v. *Pfizer, Inc.*, No. 4 Civ. 704 (ERK), 2009 WL 1456582, at *4 (E.D.N.Y. May 22, 2009) (internal quotation marks omitted).

As to the second burden, "a fraud claim must be supported by allegations 'that give rise to a strong inference of fraudulent intent.'" *PetEdge, Inc.* v. *Garg*, 234 F. Supp. 3d 477, 491 (S.D.N.Y. 2017) (quoting *S.Q.K.F.C., Inc.* v. *Bell Atl. Tricon Leasing Corp.*, 84 F.3d 629, 634 (2d Cir. 1996)).  A plaintiff can meet this standard by "'[i] alleging facts to show that [the] defendant[ ] had both motive and opportunity to commit fraud, or by [ii] alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.'" *Id.*  To demonstrate motive and opportunity to commit fraud, "a

plaintiff must allege that the defendant 'benefitted in some concrete and personal way from the purported fraud.'" *Goonewardena* v. *Forster & Garbus LLP*, No. 18 Civ. 29 (MKB), 2019 WL 121677, at *7 (E.D.N.Y. Jan. 7, 2019) (quoting *ECA, Loc. 134 IBEW Joint Pension Tr. of Chi.* v. *JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009)).  "To show 'strong circumstantial evidence of conscious misbehavior or recklessness,' a plaintiff must demonstrate 'at the least, conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it."' *Goonewardena*, 2019 WL 121677, at *7 (quoting *Kalnit* v. *Eichler*, 264 F.3d 131, 142 (2d Cir. 2001)).

In view of these legal standards, Plaintiff has not come close to stating a claim for fraud or fraudulent inducement.  The bulk of Plaintiff's allegations concerning these counts are entirely conclusory.  Often, Plaintiff merely appends an adjective to her allegations in order to suggest fraud, rendering these claims additional variations on her theme of discontent with New York's statutory disciplinary scheme.  For example, she claims that "[t]he Department [of Education] has instituted a deceitful practice of skipping over the proper determination of probable cause" (SAC ¶ 43), and that the same constituted a "fraudulent concealment of a waiver of Constitutional due process" (*id.* at ¶ 22). These allegations do not state a claim for fraud.  For instance, how Defendants' conduct could constitute "false material misrepresentations" when Defendants appear to have been operating pursuant to a longstanding statute that has

been the subject of extensive litigation in this Circuit remains unclear.
Plaintiff's fraudulent inducement claim is even more curious — indeed, Plaintiff
does not allege into *what* she was allegedly induced.  (*See id.* at ¶¶ 66-69
(listing the elements of fraudulent inducement without more)).

Further, Plaintiff has made no effort to comply with the heightened
pleading standard of Rule 9(b).  She has not attempted to (i) detail the
statements made by Defendants that are supposedly fraudulent; (ii) identify the
speakers; (iii) state where and when the statements were made; or (iv) explain
why the statements are fraudulent.  *Loreley*, 797 F.3d at 171.  Again, Plaintiff
has painted only with broad strokes, accusing Defendants of fraud as a means
of further expressing her dissatisfaction with her termination and the
procedure used to reach that result.  She does not point to any specific
statements made by Defendants; who may have said something misleading; or
where the statements were made.  Nor does Plaintiff explain what would
motivate Defendants to commit fraud or plead facts showing strong
circumstantial evidence of conscious misbehavior or recklessness.  To the
extent Plaintiff continues to suggest that Defendants committed "fraud"
because someone other than the PEP made the probable cause finding,
Plaintiff's argument is foreclosed by binding New York and Second Circuit
authority, as discussed throughout this Opinion.  Even if this avenue existed to
challenge Plaintiff's termination, Plaintiff's complaint does not comply with any
of the requirements of Rule 9(b).  Accordingly, the Court dismisses her claims
for fraud and fraudulent inducement.

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are GRANTED and the Second Amended Complaint is dismissed with prejudice.  Further, because Plaintiff has already amended her pleadings twice, and because she has given no indication that she can amend them further to plead viable claims, the Court will not grant leave to amend.

The Clerk of Court is directed to all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated:      August 23, 2022
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge